**LUDWICK et al. v. FOWLER.**

No. 13674.

Court of Civil Appeals of Texas. Dallas.

Jan. 25, 1946.

Dissenting Opinion Feb. 1, 1946.

Rehearing Denied March 15, 1946.

Dissenting Opinion on Rehearing March 18, 1946.

W. H. Reid and Ewing Jones, both of Dallas, for appellants.

J. Lee Zumwalt, of Dallas, for appellee.

LOONEY, Justice.

The appellants, V. C. Ludwick and Mrs. Nora Kelly, nephew and niece respectively of Mrs. Nancy C. Bailey, deceased, brought this action in the County Court to set aside the probate of Mrs. Bailey's will. The instrument was probated on October 3, 1944, purports to have been executed December 11, 1942, signed by Mrs. Bailey making her mark, and witnessed by Mrs. Maudie Flatt and Albert S. Jackson, who signed in two places, once under the heading "Witnesses", and the other the at-

testing clause reciting facts showing that the instrument was executed with the formalities and under the solemnities required by the statute for the proper execution of a will.

Mrs. Bailey having died on September 18, 1944, her will together with the application for its probate was filed in the County Court of Dallas County on September 20, 1944, by Chlorris Fowler, named sole independent executrix in the will; and, after citation, in due time was admitted to probate October 3, 1944, on the affidavit of Mrs. Flatt taken in open court, Mr. Jackson, the other subscribing witness, having preceded Mrs. Bailey in death.

Prior to January 25, 1945, appellants, as next of kin, filed an application in said court to have the will annulled and the probate thereof set aside, making the independent executrix a party to said proceeding which was heard and denied by the County Court; appealed to the District Court where on May 6, 1945, appellants filed their second amended pleading in which they sought to have the will and its probate nullified and set aside on the following grounds: (1) That at the time of the purported execution of the will Mrs. Bailey, because of feebleness of mind, did not possess testamentary capacity; (2) that the purported execution of the will by Mrs. Bailey was procured by undue influence exerted upon her by Chlorris Fowler, the person named independent executrix; (3) that the alleged will was not executed with the formalities and solemnities required by statute.

The cause coming up for trial on May 28, 1945, a jury was demanded and duly empaneled and, at the conclusion of appellants' evidence, the court being of opinion that only a question of law was raised, withdrew the case from the jury and rendered judgment in favor of appellee, denying the relief sought by appellants, to which they duly excepted, gave notice of and perfected this appeal.

The first ground of attack upon the will and its probate is the want of testamentary capacity of Mrs. Bailey. This was neither proven nor were the facts sufficient to raise the issue; in fact was disproven, and in briefing the case appellants seem to have abandoned that contention.

The second ground of attack was that the execution of the will by Mrs. Bailey was procured by the undue influence exerted upon her by Chlorris Fowler, the person named as executrix.

We have heretofore shown that the will purports to have been properly executed and probated. Its provisions in substance are these: (1) Testatrix directed that all her just debts be paid, quoting: "(2) It is my desire and will that I be buried by the side of my husband and that the Suggs Funeral Home of Dallas have charge of the funeral. (3) I hereby will, devise and bequeath unto my good friend, Miss Chlorris Fowler, * * * and who has been most kind and helpful to me, the sum of $100 to be paid to her as soon after my death as sufficient funds therefor are available. I will my featherbed to Mrs. Bert Rawlins, my good friend and neighbor; and to my good friend and neighbor, Mrs. Rose Martinez, I will and bequeath the sum of $25 in cash. (4) All the residue of the property of whatever kind, real, personal and mixed, and wheresoever situated, of which I may die seized and possessed, I hereby will, devise and bequeath unto the Fowler Home for Children of Dallas, Dallas, Texas * * *. " In the next paragraph the testatrix appointed "my good friend Miss Chlorris Fowler as sole executrix of this my last will and testament without bond", and provided that the County Court take no action nor exercise any authority over the estate other than to probate the will and require a return of an inventory, appraisement, and list of claims. She then certified that she executed the instrument by signing it in the presence of the witnesses whose names appear below, and who attested the execution of the will at her request and in her presence and in the presence of each other. This is followed by the signature of the witnesses Mrs. Maudie Flatt and Albert S. Jackson, who also signed the attesting certificate stating that the instrument was signed by Mrs. Bailey, who declared that the instrument was her last will and testament and that she requested them to witness its execution, and at her request and in her presence and in the presence of each other stated that they had signed their names as witnesses.

Mrs. Bailey, being about 90 years of age at the time the will was executed, lived alone in her home, except for some roomers, her husband having previously died. Miss Fowler, a near neighbor, had ministered continuously to her prior to her death, and also to her husband before his

death. Mrs. Bailey was heard to say that Miss Fowler looked after her when she was sick, had been nice to her husband and had rendered every service she could for a long period of time without charging anything for her services. So we do not think it at all unreasonable or anything out of the ordinary for Mrs. Bailey, when she made her will, to remember her friend in whom she had confidence by giving her the small gift of $100 and appointing her sole independent executrix of her will, referring to Miss Fowler as "my good friend."

■ It seems that the chief desire of Mrs. Bailey, to the exclusion of everything else, was to be buried in a grave beside that of her deceased husband, and in this connection Miss Fowler suggested that she make a will directing that this be done, stating that otherwise her niece might not or would not do so. This is the only suggestion, so far as is disclosed by the record, that Miss Fowler ever made to Mrs. Bailey in regard to the execution of a will. She never suggested how Mrs. Bailey should dispose of her property, or to whom. The record, in our opinion, discloses that Mrs. Bailey had a will of her own, which persisted to the last. This is illustrated by the following incident which occurred just a short time before her death: Mrs. Bailey being about 92 or 93 years of age, Miss Fowler offered to purchase Mrs. Bailey's home, and in that connection suggested that it would be better for her to give up her home and "live in an old ladies home." This suggested arrangement was promptly vetoed by Mrs. Bailey who said "No, that she was going to die right there." This is the only instance, so far as disclosed by the record, that Miss Fowler ever tried to influence Mrs. Bailey in regard to her property. While it is quite true that in the execution of her will, Mrs. Bailey neither mentioned in any way nor recognized her niece and nephews, appellants herein, yet in our opinion this is not to be marveled at in view of the fact that the record fails to disclose that either the niece or nephews ever ministered to, visited, or paid any attention whatsoever to these aged people, Mrs. Bailey or her husband. The delicate attention these relatives could and probably should have bestowed upon these lonely, aged people, was left to others, and seems to have been voluntarily undertaken by Miss Fowler, who for years was their Good Samaritan. We conclude that the issue of undue influence was not raised by evidence; hence the court did not err in failing to submit same to the jury.

■ The main contention of appellants is that the will was not executed with the formalities and under the solemnities and circumstances required by the statute; and, narrowed still further, that the will was not shown to have been signed by Mrs. Bailey. The will having been duly probated in the County Court and judgment to that effect entered, obviously the burden of proof was upon appellants to establish the issue presented, that is, that the will was not properly executed by Mrs. Bailey. Although Mrs. Flatt, one of the subscribing witnesses, had twice attested to the fact that the will was signed by Mrs. Bailey and by the subscribing witnesses in her presence (once when Mrs. Flatt signed the attestation clause to the will and another time under oath in the County Court when the will was probated on her testimony), yet the appellants now rely upon the testimony of Mrs. Flatt to overturn the will and the probate thereof. Mrs. Flatt testified on the recent trial that on the morning of the day the will was executed, Mrs. Bailey sent for her to come to Miss Fowler's home, that she (Mrs. Bailey) was making her will and wanted Mrs. Flatt to sign same as a witness. In response to this request, Mrs. Flatt went to the room where Mrs. Bailey and Mr. Albert S. Jackson, the attorney who wrote the will, were, the three being the only persons present during the proceedings. Mr. Jackson supervised and did the talking; showed the document that he had prepared, said it was the will of Mrs. Bailey and that they wanted Mrs. Flatt to witness same; Mrs. Flatt testified that thereupon she signed the will in two places, just as it appears. All this occurred in the presence of Mrs. Bailey. Obviously what was said by Mr. Jackson on the occasion, in effect, was as if Mrs. Bailey had been speaking. This rule is announced in 68 C.J. (subject, Wills), p. 688, § 338. Although on direct examination Mrs. Flatt said that Jackson did not sign as a witness in her presence, yet at two places in her testimony on cross-examination she said that both she and Jackson signed in the presence of the testatrix. Mrs. Flatt having attested to that fact twice before, once over her signature to the will, again under oath in court when the will was probated,

and twice on cross-examination, we must assume that if her testimony is to be relied upon at all, that both she and Jackson signed as subscribing witnesses in the presence of Mrs. Bailey. However the witnesses were not required to sign in the presence of each other. The controlling statute, Article 8283, R.C.S., makes no such requirement; this was held by the Beaumont Court in Davis v. Davis, Tex. Civ.App., 45 S.W.2d 240.

■ Mrs. Flatt also testified that Mrs. Bailey's name was not on the instrument when witness signed, and that she did not see Mrs. Bailey sign the document at all. Of course this contradicts what she had twice before said, and once under oath; but under the statute it was not necessary for Mrs. Bailey to have signed in the presence of the subscribing witnesses; she could have signed out of their presence either before or after they signed. The statute controlling this subject, Article 8283, R.C.S., contains no such provision; as held by the San Antonio Court in Franklin v. Martin, Tex.Civ.App., 73 S.W.2d 919 (writ ref.). The main question and the decisive one is: Did Mrs. Bailey sign at all any time?

Aside from the presumptions that may be indulged under the circumstances, we think Mrs. Flatt gave testimony showing conclusively that Mrs. Bailey did sign the document. Mrs. Flatt testified that the same day, a short time after the events at Miss Fowler's home, she had a talk with Mrs. Bailey who said she didn't know if she had done the right thing; and that a short time before her death, Mrs. Bailey seemed troubled, stated she would like for some one to take her to town, that she wanted to make another will, desired to make certain changes, but did not indicate in what respect she wished to change the will already made. This clearly indicates that Mrs. Bailey consummated the execution of a will, was doubtful that she had done the right thing and wished to change the will, which was never done. So we have the execution of the will established by the admissions Mrs. Bailey herself made to one of the subscribing witnesses.

In regard to the presumptions that should be indulged in the situation presented by the facts in this case, the Supreme Court of Illinois, in Gould v. Chicago Theological Seminary, 189 Ill. 282, 59 N.E. 536, 538, quoting from the case of Abbott v. Abbott, 41 Mich. 540, 2 N.W. 810, said: "We know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity, of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. But, if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy in many cases to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others. It presumes they had, when they signed, full knowledge of what they were doing; and in case they are dead their attestation, when proved, is prima facie evidence that all was done as it should be." Also, quoting from Mc-Curdy v. Neall, 42 N.J.Eq. 333, 7 A. 566, the Court said: "The attestation clause is perfect, and the execution to which the witnesses thus certify and attest is an exact compliance with the statute. Under such circumstances the court must have clear proof, to warrant the conclusion that the will was not duly executed."

■ The evidence in our opinion is such that reasonable minds would not differ in regard to the fact that the will in question was in all respects properly executed and probated; to hold otherwise on the testimony of Mrs. Flatt, which is so contradictory as to be an unsafe guide, would be a mockery of the right of testamentary disposal of property.

■ In point of error 5 appellants contend or at least seem to contend that the will was improperly probated in the County Court on the testimony of only one of the attesting witnesses. As heretofore related, Mr. Albert Jackson, the attorney who drew the will and who was one of the attesting witnesses, died previous to the death of Mrs. Bailey; hence the will was probated alone on the affidavit of Mrs. Flatt, the other subscribing witness. We do not think the contention is correct. Article 3344, R.C.S., subd. 1, in our opinion, is a complete answer to such contention; it provides that "A written will produced in court may be proved: 1. By the affidavit of one of the subscribing witnesses thereto, taken in open court and subscribed by such witness." The record in this case

discloses that that is precisely what was done.

Finding no error in the action of the court below, we overrule all points of error presented for reversal, and affirm the judgment.

Affirmed.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

The purported will of Mrs. Bailey was duly probated; subsequently this contest was filed setting up, among other grounds, that said instrument was not the will of the testatrix and not attested in accordance with law.

At the time of the death of Mrs. Bailey, she was seized and possessed of a home and some personal property located in the City of Dallas, Texas; Left as her sole heirs and only V. C. Ludwick and Mrs. Nora Kelly (appellants herein), children of her deceased sister. Mrs. Bailey was 93 years of age, living alone at her home, her husband having preceded her in death by two or three years. She often expressed a desire to be buried beside the grave of her deceased husband, and to be buried in a black dress. These desires seemed to be her constant anxieties. Miss Chlorris Fowler (appellee herein) independent executrix and one of principal legatees under the will, lived near, within the second block from Mrs. Bailey's home. She often visited Mrs. Bailey, going to and from her work, and many times suggested to her that she ought to make a will; that unless she made a will, she couldn't be buried by the side of her husband, asserting that "these nieces wouldn't let her be buried by his side," and that "She wanted her to be sure and make a will, that if anything should happen to her and she didn't have a will that these nieces would not let her be buried by her husband and she wanted her to settle so she was to have charge and so she could take and have her buried by her husband." On the morning before the purported execution of the will, Mrs. Flatt, a neighbor of Mrs. Bailey, heard Miss Fowler tell Mrs. Bailey to be at her home; that "she wanted her to be at her house the next morning, that her lawyer was going to be there to make the will." On the next morning Miss Fowler invited Mrs. Flatt also to be at her home, telling her that her attorney would be there and that Mrs. Bailey wanted her (Mrs. Flatt) to come and sign the will. When Mrs. Flatt arrived, Miss Fowler and the attorney were present in the room with Mrs. Bailey; Miss Fowler immediately left the room, leaving the attorney, Mrs. Bailey and Mrs. Flatt. The attorney then, in the presence of Mrs. Bailey, told Mrs. Flatt that they wanted her to sign the will; Mrs. Bailey said nothing, only nodded recognition of Flatt when she entered the room. The purported will had been previously drafted by the attorney, and as Mrs. Flatt entered the room, the attorney said that "it was her (Mrs. Bailey's) will," and at the time the instrument was handed to Mrs. Flatt it evidenced no signature by Mrs. Bailey as testatrix, or the attorney as a subscribing witness. Mrs. Flatt testified that it was never signed or attested in her presence. The evidence further shows that Mrs. Bailey was very deficient in hearing; could only distinguish conversation or voices audible enough to be heard at a distance of two houses away. As to whether she heard what the attorney had to say about the will, is left solely to conjecture. Subsequently, Mrs. Bailey told Mrs. Flatt that "she didn't know if she had done the right thing" with regard to the instrument; that "she wasn't satisfied, that she was going to make another one. She wanted somebody to take her to town and on Sunday before she died she said if she could get anybody to take her down the next week she was going to make it different and she didn't say how different." The evidence further shows that during the last few months of Mrs. Bailey's life, Miss Fowler did not visit the home of Mrs. Bailey as often as she did before the drafting of the purported will, and she was heard to say that Mrs. Bailey would be better off if she would give up her home and live in an "old lady's home."

While the bequests to Miss Fowler and the Fowler Home, and the exclusion of the niece and nephews from Mrs. Bailey's bounty, as was done in the purported will, throw no particular light on the issues involved in this appeal, yet the extra-judicial conclusion of the majority that the exclusion of the niece and nephews "is not to be marveled at in view of the fact that the record fails to disclose that either the niece or nephews ever ministered to, visited, or paid any attention whatsoever to these aged people, Mrs. Bailey or her husband. The delicate attention these

relatives could and probably should have bestowed upon these lonely, aged people, was left to others, and seems to have been voluntarily undertaken by Miss Fowler, who for years was their Good Samaritan" justifies a review of the evidence with due respect to the conclusion. The record reveals that there is not a scintilla of evidence supporting the inference expressed by the majority that the niece and nephews were unkind or negligent to these aged people, or that they failed to minister to their wants, or to visit them in their declining years; thus leaving, as said by the majority, such kindly "delicate attention * * * to others, which seems to have been voluntarily undertaken by Miss Fowler." Only three witnesses testified in this case—Mrs. Flatt, Mrs. Howard and Mrs. V. C. Ludwick. The niece and nephews had not testified, when their attorneys rested the case; and none of the above witnesses testified that the niece or nephews failed to render such "delicate attention" to this aged couple. The only suggestion in the record to give rise to any such acts of the "Good Samaritan", was on cross-examination of Mrs. Flatt, viz:

"Q. Did you ever hear Mrs. Bailey say anything about Miss Fowler coming down there and looking after Mr. Bailey when he was sick? A. Yes, she said she had been nice to her.

"Q. Did she say she rendered every service she could for a long period of time and didn't charge her anything? A. I think I have heard her say that"; and, further, Miss Fowler was very attentive to Mrs. Bailey before the purported execution of the will, would stop in and see her most every day; but, after the purported execution of the will, Miss Fowler's attention to Mrs. Bailey became less, and visits further apart. She wanted to put her in an "old lady's home."

Mrs. Howard testified:

"Q. Did you ever talk to Miss Fowler about Mrs. Bailey's will? A. No, she just had Mrs. Bailey to make her will at the time she made it. * * *

"Q. Did you ever hear Miss Fowler ask her to make a will? A. She told me if she didn't want Mrs. Kelly to get the place to make a will."

Reviewing this record, the evidence in no way reflects an unkind act on the part of the niece and nephews toward their mother's sister, or that they neglected her in any of the "delicate attentions" that their aunt could have expected of them. Indeed, Mrs. Bailey may have made her will in any way she desired, leaving out her niece and nephews, and bestowing all her bounty upon others; and it would be the natural impulse, particularly of a lonely aged person, for her to favor those who were kind and considerate of her, and to adopt their suggestions as to disposition of her property, and to exclude those from whom she could reasonably expect (but did not receive) kindly ministration and attention. However that may be, the issue involved in this case is not the fairness or unfairness of the purported bequest. It is whether the instrument probated was the free testament of the deceased, executed under the formalities and solemnities of law. On this appeal the issue is: Was the trial court authorized to disregard all testimony in appellants' favor, touching the issue of due execution of the will by testatrix, and the issue of undue influence exerted by Miss Fowler upon Mrs. Bailey to overcome her free agency in the execution of the will?

I am not in accord with the holding of the majority that the controverted issue of fact, controverted only by contradicting and impeaching testimony of Mrs. Flatt, to the effect that the deceased executed the will under legal formalities and solemnities, authorized the trial court to take the case from the jury and peremptorily render judgment sustaining the probation of the will. In my opinion, under the facts and circumstances of this case, the question of whether testatrix ever executed the will was one for the jury. The mere fact that a subscribing witness gave testimony in the probate court in a noncontested proceeding, when the will was probated, is in conflict with her testimony in the contested proceedings in the district court to set aside the order of probate, and that the testatrix declared to Mrs. Flatt that "she didn't know whether she had done the right thing in making the will", do not preclude the question that it can be said a reasonable person would not have determined the issue adversely to the holding of the trial court. The jury in this case was the trier of facts; they were the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given their testimony.

Clearly the evidence raised fact issues for the determination of the jury; hence the action of the court transcends all right of trial by jury.

In McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 755, 77 S.W. 1025, Judge Gaines, speaking for the Supreme Court, said: "When the declarations of an alleged testator consist, in effect, of the naked assertion that he has made a will, or that he has revoked one that is proved to have been executed, they are generally excluded; and we think such action is proper, for the reason that such declarations are merely statements of a legal conclusion and not a statement of the facts from which that conclusion should be deduced." This declaration nullifies the probative effect of Mrs. Bailey's statement to Mrs. Flatt that "she didn't know whether she had done the right thing in making the will." Even had she said that she had made the will, such would be merely a legal conclusion, and not a statement of the facts.

In the case of May et al. v. Brown, 190 S.W.2d 715, 717, decided by our present Supreme Court, the question involved was whether or not the testator made a subsequent will under the formalities and solemnities required by law as to revoke the prior will. The trial court, affirmed by the San Antonio Court of Civil Appeals, held that the evidence justified a peremptory instruction as a matter of law; that the subsequent will was never executed, hence probated the prior will. In reversing the trial court and the Court of Civil Appeals, the Supreme Court adopted the findings of the lower courts, reciting the facts to be that the first will was duly executed; that, on the second will, the evidence shows that shortly before the death of the testator (Mr. Fanning), he began to think more about his family, especially so after his son visited him. Sometime after the purported new will was executed in his own handwriting, he asked two young ladies who worked for him to sign as witnesses. After his death this will could not be found. Fanning told his son that he had made a prejudicial will, but that he had changed that; that he had made a new will in which he made his son executor. Fanning made statements indicating that he wanted his family to have the enjoyment of his property. Mrs. Brown (proponent of the first will) told someone that Mr. Fanning "was changing everything over and she did not see why,

because his family had never done anything for him." About this time Fanning made his wife the beneficiary in his insurance policy, sent $250 to each of his children and $2,500 to his wife. Shortly before that time he asked two lawyers with whom he was associated at the Elk's Club, if a will written wholly in his own handwriting would be a valid will, and was informed that it would be. Fanning was taken sick in the Elk's Club, and carried to his apartment where he died. Mrs. Brown and others were present when he died; she had those present to take everything out of his pockets, including his keys, and give them to her; she sent her son down to the office, according to some of the witnesses, to see if he could find a will, according to others, to see if he could find Mrs. Bertha Fanning's address. Her son returned with a telegram, saying that was all he could find, but another witness testified that he saw the son coming out of Mr. Fanning's office with a tin box under his arm. This tin box was later found in the apartment. "There is some probability that the second will might have been in this tin box." On this testimony the Supreme Court held that the evidence "taken in its entirety, tends to show that Fanning made a later will and to this extent casts suspicion upon the genuineness of the [first] will as being the last will and testament of Fanning, such as it purported on its face to be"; and, further, the court held that the testimony "raised the issues whether Fanning executed a later will or declaration in writing executed with like formalities with the will, subsequent to the date of the (first) will * * * and, if so, whether the testator revoked the former will." The court concluded its opinion that the trial court erred in not overruling the motions for instructed verdict: "and this, notwithstanding the proponent introduced evidence which, standing alone, was sufficient to establish prima facie that the will in question (first will) had not been revoked."

To authorize the probate of an instrument as a will, it must show that the testator signed the instrument or give evidence that he signed before the subscribing witnesses. In the case at bar, Mrs. Flatt, who signed the will attesting the signatures, testified that the testatrix did not sign the will in her presence, and that she did not sign it in the presence of Mr. Jackson the other subscribing witness, and that

she did not know when, if ever, Jackson and Mrs. Bailey signed the will. Indeed, Mrs. Flatt's signed statement in the probate court, in the noncontested application to probate the will, tends to show that the will was executed with the formalities and solemnities of law as to cause it to be probated. Mrs. Flatt explained the signing of the statement, that it was not read over by her, or to her, and that she was led to believe that it only related to the soundness of Mrs. Bailey's mind; otherwise it did not correctly relate her testimony as to the execution of the will. The probation of the will raises prima facie a presumption of validity; and, subsequently, to set it aside, the burden rests on the contestants to show its invalidity. It is clear that the testimony in this case is sufficient, at least prima facie, to raise the issue of whether Mrs. Bailey executed the will. She was extremely hard of hearing; thus the statement of the attorney to Mrs. Flatt to sign the instrument as the will of Mrs. Bailey, as a matter of law it could hardly be said that such declaration would be imputed to the aged lady: It is only where one has knowledge of declarations of a bystander, as affects his interest, that he is liable therefor, or bound thereby.

The vital issues having been properly pleaded and evidence offered in support of the issues, manifestly the action of the court in refusing to let the jury determine such issues, and peremptorily rendering judgment, was error. In Lee v. International & G. N. Ry. Co., 89 Tex. 583, 36 S. W. 63, 65, quoted with approval in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, it is said: "To authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Or, as stated in Western Assur. Co. v. Busch, Tex.Civ. App., 203 S.W. 460: "The test as to the conclusiveness of the evidence is, Could it reasonably be supposed that the minds of unprejudiced men of ordinary intelligence might differ about it, either as to the weight to be given to the testimony or to the deduction drawn therefrom?" See Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035. And, in 41 Tex.Jur., 1041, § 237, the text is: "Before an issue may be submitted there must be some evidence to sustain the pleading that raises such issue. If support is found in substantial evidence, al-though strongly contested, the issue should be submitted. A jury question is raised if the evidence, viewed in the most favorable light—disregarding all evidence to the contrary and indulging every legitimate inference—substantially supports the material allegations. As has been said, 'If there is any evidence on an issue of fact, upon which reasonable minds could differ, it becomes the duty of the trial court, * * * to submit such issue to the jury'." A jury is supposed to be impartial and of ordinary intelligence to pass upon all facts and circumstances, and may reach a conclusion adverse to that of the court. The evidence in this case clearly raises more than a mere surmise or suspicion; hence the trial court should not have invaded the province of the jury and held that the facts and circumstances admit of only one reasonable conclusion.

Furthermore, the circumstances surrounding the execution of the instrument claimed to be the will of Mrs. Bailey are not entirely free of the issue touching undue influence of Miss Fowler upon Mrs. Bailey as to cause her to disinherit her sister's children, give the principal part of her estate to Miss Fowler and the Fowler Home, and place Miss Fowler in complete charge of her estate as independent executrix. Miss Fowler knew the idiosyncrasies of this aged lady (90 or 93 years old); knew that she wanted, above all else, to be buried by the side of her husband, and to be shrouded in a black dress. Miss Fowler suggested to her that she ought to make a will, that "unless she did so, she couldn't be buried by the side of her husband," that "these nieces wouldn't let her be buried by his side," and that she wanted to be sure that she made a will to give her (Miss Fowler) charge of her estate and to have her buried by the side of her husband. Miss Fowler caused her own attorney to prepare the purported will, had Mrs. Bailey come to her home, and she secured the attendance of Mrs. Flatt to witness the execution. When the instrument was presented to Mrs. Flatt, Miss Fowler left the room, evidently conscious of its terms, giving to her and the Fowler Home all of Mrs. Bailey's property—to the exclusion of her niece and nephews. Mrs. Bailey was not satisfied with what had been done or suggested by Miss Fowler; she told Mrs. Flatt that she intended to change the instrument. After this incident Miss Fowler was not as kind

and attentive to Mrs. Bailey as she had been before, and suggested that Mrs. Bailey be placed in a home for aged women. Without further detailing the evidence raising the issue on undue influence, and considering that most favorable to appellants (disregarding conflicts, contradictions and all adverse evidence), it must be concluded that this issue also should have been determined by the jury. "It is generally true that the exercise of undue influence in procuring the execution of a will can only be shown by circumstances. Direct evidence of such fact is rarely ever obtainable * * *." In determining this issue "All of the circumstances shown by the evidence should be considered, and even though none of the circumstances standing alone would be sufficient to show undue influence, if when considered together they produce in the ordinary mind a reasonable belief that undue influence was exerted in the procurement of the will, they are sufficient to sustain such conclusion." Mayes v. Mayes, Tex.Civ.App., 159 S.W. 919. See Russell v. Boyles, Tex.Civ.App., 29 S. W.2d 891; Holt v. Guerguin, Tex.Civ.App., 156 S.W. 581; Barksdale v. Dobbins, Tex. Civ.App., 141 S.W.2d 1035; Holt v. Collins, Tex.Civ.App., 131 S.W.2d 813.

Viewing the evidence under the rule that all evidence tending to support a jury issue must be accepted as true, and interpreted in the light most favorable to the aggrieved party, where the court takes the case from the jury and peremptorily enters judgment, this cause should be reversed and remanded. So believing, I respectfully dissent from the majority in their affirmance.

### On Rehearing.

Rehearing denied.

BOND, Chief Justice (dissenting).

This appeal presents a question of law. The right of trial by jury is guaranteed by the Constitution, and when a court usurps such power, it is, in effect, a denial of this Constitutional right—a glorious heritage of the American people.

The will was probated, and this contest timely filed by Mrs. Bailey's sole heirs— the children of her deceased sister. On trial to a jury, called and sworn as the trier of the facts, after plaintiffs had rested their case in chief and before the defendant had offered any testimony whatsoever, the trial court, over plaintiffs' objection, sustained a motion for peremptory instruction, discharged the jury, and rendered judgment in favor of the defendant.

The opinion of the majority and the dissent of the writer on original submission relate facts which are not challenged in any material respect; and, on rehearing (opinion ordered not published), the majority concedes, I think, that there is some evidence raising issues of fact as to the due execution of the involved will and on undue influence of Miss Fowler exerted on the testatrix, Mrs. Bailey, in making the will, if, in fact, the will was executed by her. Thus, undoubtedly, it was the duty of the jury, under proper instruction from the court, to determine the involved issues, pass on the credibility of the witnesses and the weight to be given their testimony. The action of the trial court in discharging the jury and rendering judgment in the face of this record, invaded the province of the jury and usurped powers not granted to any court.

The affirmance of the judgment should have been reversed and the cause remanded to the court below for due administration of justice.