COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT WORTH

 

 

                                        NO.
2-06-438-CV

 

 

IN THE ESTATE OF MARY ANN PRUITT,

DECEASED                                                                                         

 

                                                    

                                                                                                        

 

                                              ------------

 

               FROM
PROBATE COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction

In this will contest case,
Appellant Harry Burton Walker appeals the trial court=s granting of Appellee Catherine DeLeon=s motion for summary judgment and the trial court=s order granting administration and appointing DeLeon as administrator
of the estate.  We reverse and remand.

 

 








II.  Background

Mary Ann Pruitt died on June
4, 2005, and left a will that named Walker and his wife as executors and
beneficiaries of Pruitt=s
estate.  Pruitt left only ten dollars
each to DeLeon and Lewis Armstrong, her estranged children.  Pruitt made clear in her will that she felt
no moral obligation to either of her children. 
Three of Pruitt=s employees
witnessed the execution of the will on February 6, 1991, at Pruitt=s chiropractic clinic.  Carolyn
Lunsford (AWitness
Lunsford@) and Regina Franklin Hall (AWitness Hall@) signed the
will as attesting witnesses and Marie Hall (ANotary Hall@) signed as
a notary.

The summary judgment evidence
generally shows that on the morning of February 6, 1991, Pruitt asked Notary
Hall to type up her last will and testament. 
Pruitt had both Witness Lunsford and Witness Hall sign the will, and
then she signed the will with both attesting witnesses and Notary Hall
present.  Afterward, Notary Hall
notarized the will in the presence of Pruitt, Witness Lunsford, and Witness
Hall.








DeLeon filed an application
for letters of dependent administration on July 14, 2005, alleging that Pruitt
had died intestate.  On July 25, 2005, Walker filed an
application for probate of the will.  Walker then filed a
motion to dismiss DeLeon=s
application for lack of interest in the estate. 
DeLeon replied by arguing that she had an interest as an heir at law and
that Walker had failed to prove up the will under section 84 of the Texas
Probate Code.  DeLeon then moved for
summary judgment, contending that the will was not validly executed because
Pruitt signed the will after the attesting witnesses. Walker responded by arguing that the will was
valid regardless of whether Pruitt signed after the attesting witnesses.  The trial court granted DeLeon=s motion for summary judgment, granted administration of the estate,
and appointed DeLeon as administrator of the estate.

III. Summary Judgment

In his first issue, Walker argues that the
trial court erred by granting DeLeon=s motion for summary judgment because, as a matter of law, a
testator  may sign her will after the
attesting witnesses.  Alternatively, Walker argues that a genuine
issue of material fact exists as to whether the signatures of the testator and
attesting witnesses occurred at the same time and place and formed parts of the
same transaction.[1]








A.     Summary Judgment Standards

Because DeLeon did not
specifically state that her motion for summary judgment was filed under 166a(i)
and did not strictly comply with the requirements of that rule, we will
construe the motion under the traditional standard found in 166a(c).  See Tex.
R. Civ. P. 166a(c); Michael v. Dyke, 41 S.W.3d 746, 750 (Tex. App.CCorpus Christi 2001, no pet.).

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex.
2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.

B.     Applicable Law

Section 59 of the Texas
Probate Code sets forth the requirements of a validly executed will.  The relevant portion of section 59 states as
follows: 








Every
last will and testament, except where otherwise provided by law, shall be in
writing and signed by the testator in person or by another person for him by
his direction and in his presence, and shall, if not wholly in the handwriting
of the testator, be attested by two or more credible witnesses above the age of
fourteen years who shall subscribe their names thereto in their own handwriting
in the presence of the testator. 

 

Tex. Prob. Code Ann. ' 59 (Vernon
2003).  Based on her reading of this
statute as well as case law and treatises, DeLeon posits that the general rule
is that the testator must always sign the will before the witnesses, arguing
that Aif witnesses sign before the testator, they are not attesting or
subscribing a will, but only a piece of paper.@  See Kveton v. Keding,
286 S.W. 673, 676 (Tex. Civ. App.CGalveston 1926, writ dism=d w.o.j.).  On the other hand,
Walker argues
that as a matter of law, a testator can sign after the witnesses regardless of
the circumstances.  See Guest v. Guest,
235 S.W.2d 710, 713 (Tex. Civ. App.CFort Worth 1950, writ ref=d n.r.e.); Ludwick v. Fowler, 193 S.W.2d 692, 695 (Tex. Civ.
App.CDallas 1946, writ ref=d n.r.e.).  However, both DeLeon
and Walker recognize the rule in James v. Haupt, stating that Awhere the execution and attestation of a will occur[] at the same time
and place and form parts of the same transaction, it is immaterial that the
witnesses subscribe before the testator signs.@  573 S.W.2d 285, 289 (Tex. Civ.
App.CTyler 1978, writ ref=d n.r.e.).








Walker argues that
we should not adopt the rule set forth in James because it would
conflict with our holding in In re Estate of Iverson, 150 S.W.3d 824
(Tex. App.CFort Worth
2004, no pet.).  In Iverson, the
purported will did not contain the signatures of two attesting witnesses.  Id.
at 825.  However, two individuals later
submitted affidavit testimony stating that they saw the testator sign the will
and that the testator declared his testamentary intent in their presence.  Id. at 825B26.  The affidavit in question
was not a self-proving affidavit, but the trial court nonetheless found that
the affidavit testimony constituted Asubstantial compliance@ with the section 59 requirements. 
Id. at 826.  We held,
however, that substantial compliance in the form of affidavit testimony was not
sufficient to satisfy the attesting witness requirements of section 59.  Id.

Thus, Walker asserts that
based on our holding in Iverson, we cannot Asanction@ the James
rule as it would amount to substantial compliance.  We disagree. 
In this case, unlike in Iverson, two attesting witnesses signed
the will in the presence of Pruitt.  And
if Pruitt in fact signed the will at the same time and place and as part of the
same transaction, then the section 59 requirements were satisfied.  See James, 573 S.W.2d at 289.  We decline the invitation to extend our
holding in Iverson to the facts of this case.  The James rule governs our
analysis.  See id.








C.     Analysis

The evidence attached to
DeLeon=s motion for summary judgment includes the affidavit and deposition
testimony of Notary Hall as well as the affidavit of Witness Hall.  Notary Hall stated in her deposition that
sometime during the morning on February 6, 1991, Pruitt asked her to type up
the will.  Notary Hall stated in her
affidavit that Witnesses Lunsford and Hall signed the will at separate times
and that Pruitt would come out of her office and witness them sign the
will.  Notary Hall also stated in her
affidavit that all four individuals got together in Pruitt=s office to witness Pruitt sign the will.  Further, Notary Hall testified in her
deposition that all of this was done by lunchtime on February 6, 1991.

Witness Hall stated in her
affidavit that after she and Witness Lunsford signed the will, they all met
together later in Pruitt=s office to
witness Pruitt sign the will.  She then stated
that Notary Hall signed the will in the presence of all four individuals.








Walker attached to his
response the same evidence as described above in DeLeon=s motion[2]
but also included Witness Lunsford=s affidavit and deposition testimony. 
Witness Lunsford=s affidavit
is essentially the same as Witness Hall=s affidavit in that Witness Lunsford stated that after she and Witness
Hall signed the will, the four individuals later met in Pruitt=s office to witness Pruitt sign. 
Witness Lunsford went on to state that she, Witness Hall, and Pruitt
witnessed Notary Hall sign the will. 
Witness Lunsford=s deposition
testimony, however, is slightly different. 
The following are three excerpts from that deposition:

Q: You signed it and [Witness Hall] signed it and then [Pruitt] signed
it?

A: Uh-huh.

Q: Was [Notary Hall] present during your signature?

A: Yes.

Q: Was she present when [Witness Hall] signed it?

A: Yes, sir.

Q: Was she present when [Pruitt] signed it?

A: Uh-huh.

Q: Okay.

A: We were all three there C well, all four of us with
[Pruitt] and we were altogether and we all signed it. (Emphasis added).

 

Q: So you were present when [Pruitt] signed?

A: Yes, sir.

Q: You signed it?

A: Uh-huh.

Q: And then did [Witness Hall] sign it or did it just not go in any
particular order?

A: I don=t
think it went in any particular order. 
Well, we signed it before [Pruitt] did because when we got through
signing it, [Pruitt] said now I got to have my John Henry [sic] down here.

 

Q: As I understand [it,] your testimony is that you believe that you
signed it before [Pruitt]?

A: Yes, sir, I do.








Q: And did [Witness Hall] sign it before [Pruitt] as well?

A: I think so.

Q: Did [Notary Hall] sign it before [Pruitt]?

A: I couldn=t say
about that one.

Q: Why is that?

A: Well, we was all in there
talking and things and I answered a phone and I don=t know what the phone wasCprobably something [sic] wanting an appointment, but anyway when I
looked back down and was back talking to them again, well, they had all
signed.  I can=t say when they signed it, they signed it with us in there, though,
we was all in there together. (Emphasis added).








Assuming without agreeing that DeLeon met her initial burden of
demonstrating that she is entitled to judgment as a matter of law, Walker
responded with summary judgment evidence raising a fact issue as to the events
surrounding the execution of the will. 
Witness Lunsford stated in her deposition that Awe
were altogether and we all signed it.@  This statement raises a fact issue as to
whether all the signatures occurred at the same time and place and formed parts
of the same transaction.  While this
statement is the most definitive statement evidencing that the entire process
was substantially contemperaneous, the second and third excerpts set forth
above also present facts regarding the will execution that a reasonable trier
of fact could interpret as having occurred at the same time and place as part
of the same transaction.  From the
testimony in the second excerpt, a trier of fact could determine that Pruitt
signed the will immediately after the attesting witnesses.  Likewise, the testimony in the third excerpt
appears to place all the individuals in the same room near the time that all
the signatures occurred.  Thus,
considering witness Lunsford=s deposition testimony, we
cannot say that no genuine issue of material fact exists and that DeLeon was
entitled to judgment as a matter of law. 
Accordingly, we hold that the trial court erroneously granted summary
judgment, and we sustain Walker=s first issue.

 

IV. Administration of the Estate

In his second issue, Walker
argues that if the summary judgment is reversed and the case remanded for further
proceedings concerning whether the will was executed at the same time and place
and as part of the same transaction, then the order appointing DeLeon as
administrator of the estate should also be reversed pending a final
determination by the trial court regarding the execution of the will.  We agree.

The trial court=s order granting administration and appointing DeLeon as administrator
is predicated on the finding that Pruitt died without leaving a lawful
will.  Thus, because we have sustained
Walker=s first issue, we hold that the trial court also erred by granting
administration of the estate and appointing DeLeon as administrator of the
estate.  Accordingly, we sustain Walker=s second issue.

 

 








V. Conclusion

Having sustained both of Walker=s issues, we reverse the trial court=s judgment and remand the case to the trial court for further
proceedings consistent with this opinion.

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:  February 21, 2008











[1]DeLeon
asserts that Walker is barred from claiming that there are genuine issues of
material fact for the first time on appeal. 
See McConnell v. Southside I.S.D., 858 S.W.2d 337, 341
(Tex. 1993).  We agree that Walker did
not specifically state in his written response that a Agenuine
issue of material fact exists,@ but the response did fairly
apprise DeLeon and the trial court of the issue that Walker was contending
defeated DeLeon=s
motion.  See City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Specifically, the
motion stated that A[I]t
is clear from the testimony and supporting affidavits that the execution of
this will and attestation occurred at the same time and place and formed parts
of the same transaction.  Therefore, as a
matter of law, a validly executed and attested to will exists in this matter.@  It is clear that Walker adequately expressed
this issue of contention in direct response to DeLeon=s
motion.





[2]Walker attached a corrected version
of Notary Hall=s deposition, in which she stated
that after Witnesses Lunsford and Hall signed the will, they all met later in
the day in Pruitt=s office to witness Pruitt sign the
will.