In the ESTATE OF Mary Ann PRUITT, Deceased.

No. 2–06–438–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 21, 2008.

Rehearing Overruled March 27, 2008.

Gina M. Bruner, Bryan D. Bruner, Forth Worth, for Appellant.

David C. Bakutis, Fort Worth, for Appellee.

PANEL A: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

### I. INTRODUCTION

In this will contest case, Appellant Harry Burton Walker appeals the trial court's granting of Appellee Catherine DeLeon's motion for summary judgment and the trial court's order granting administration and appointing DeLeon as administrator of the estate. We reverse and remand.

### II. BACKGROUND

Mary Ann Pruitt died on June 4, 2005, and left a will that named Walker and his wife as executors and beneficiaries of Pruitt's estate. Pruitt left only ten dollars each to DeLeon and Lewis Armstrong, her estranged children. Pruitt made clear in her will that she felt no moral obligation to either of her children. Three of Pruitt's employees witnessed the execution of the will on February 6, 1991, at Pruitt's chiropractic clinic. Carolyn Lunsford ("Witness Lunsford") and Regina Franklin Hall ("Witness Hall") signed the will as attesting witnesses and Marie Hall ("Notary Hall") signed as a notary.

The summary judgment evidence generally shows that on the morning of February 6, 1991, Pruitt asked Notary Hall to

type up her last will and testament. Pruitt had both Witness Lunsford and Witness Hall sign the will, and then she signed the will with both attesting witnesses and Notary Hall present. Afterward, Notary Hall notarized the will in the presence of Pruitt, Witness Lunsford, and Witness Hall.

DeLeon filed an application for letters of dependent administration on July 14, 2005, alleging that Pruitt had died intestate. On July 25, 2005, Walker filed an application for probate of the will. Walker then filed a motion to dismiss DeLeon's application for lack of interest in the estate. DeLeon replied by arguing that she had an interest as an heir at law and that Walker had failed to prove up the will under section 84 of the Texas Probate Code. DeLeon then moved for summary judgment, contending that the will was not validly executed because Pruitt signed the will after the attesting witnesses. Walker responded by arguing that the will was valid regardless of whether Pruitt signed after the attesting witnesses. The trial court granted DeLeon's motion for summary judgment, granted administration of the estate, and appointed DeLeon as administrator of the estate.

### III. SUMMARY JUDGMENT

In his first issue, Walker argues that the trial court erred by granting DeLeon's motion for summary judgment because, as a matter of law, a testator may sign her will after the attesting witnesses. Alternatively, Walker argues that a genuine issue of material fact exists as to whether the signatures of the testator and attesting witnesses occurred at the same time and place and formed parts of the same transaction.[1]

### A. Summary Judgment Standards

Because DeLeon did not specifically state that her motion for summary judgment was filed under 166a(i) and did not strictly comply with the requirements of that rule, we will construe the motion under the traditional standard found in 166a(c). *See* TEX.R. CIV. P. 166a(c); *Michael v. Dyke*, 41 S.W.3d 746, 750 (Tex. App.-Corpus Christi 2001, no pet.).

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston*, 589 S.W.2d 671 at 678. The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

### B. Applicable Law

Section 59 of the Texas Probate Code sets forth the requirements of a validly executed will. The relevant portion of section 59 states as follows:

---

1. DeLeon asserts that Walker is barred from claiming that there are genuine issues of material fact for the first time on appeal. *See McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex.1993). We agree that Walker did not specifically state in his written response that a "genuine issue of material fact exists," but the response did fairly apprise DeLeon and the trial court of the issue that Walker was contending defeated DeLeon's motion. *See City of Houston v. Clear Creek* *Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Specifically, the motion stated that "[I]t is clear from the testimony and supporting affidavits that the execution of this will and attestation occurred at the same time and place and formed parts of the same transaction. Therefore, as a matter of law, a validly executed and attested to will exists in this matter." It is clear that Walker adequately expressed this issue of contention in direct response to DeLeon's motion.

Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator in person or by another person for him by his direction and in his presence, and shall, if not wholly in the handwriting of the testator, be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the testator.

TEX. PROB.CODE ANN. § 59 (Vernon 2003). Based on her reading of this statute as well as case law and treatises, DeLeon posits that the general rule is that the testator must always sign the will before the witnesses, arguing that "if witnesses sign before the testator, they are not attesting or subscribing a will, but only a piece of paper." *See Kveton v. Keding*, 286 S.W. 673, 676 (Tex.Civ.App.-Galveston 1926, writ dism'd w.o.j.). On the other hand, Walker argues that as a matter of law, a testator can sign after the witnesses regardless of the circumstances. *See Guest v. Guest*, 235 S.W.2d 710, 713 (Tex. Civ.App.-Fort Worth 1950, writ ref'd n.r.e.); *Ludwick v. Fowler*, 193 S.W.2d 692, 695 (Tex.Civ.App.-Dallas 1946, writ ref'd n.r.e.). However, both DeLeon and Walker recognize the rule in *James v. Haupt*, stating that "where the execution and attestation of a will occur [ ] at the same time and place and form parts of the same transaction, it is immaterial that the witnesses subscribe before the testator signs." 573 S.W.2d 285, 289 (Tex.Civ. App.-Tyler 1978, writ ref'd n.r.e.).

DeLeon argues that we should not adopt the rule set forth in *James* because it would conflict with our holding in *In re Estate of Iversen*, 150 S.W.3d 824 (Tex. App.-Fort Worth 2004, no pet.). In *Iversen*, the purported will did not contain the signatures of two attesting witnesses. *Id.* at 825. However, two individuals later submitted affidavit testimony stating that they saw the testator sign the will and that the testator declared his testamentary intent in their presence. *Id.* at 825–26. The affidavit in question was not a self-proving affidavit, but the trial court nonetheless found that the affidavit testimony constituted "substantial compliance" with the section 59 requirements. *Id.* at 826. We held, however, that substantial compliance in the form of affidavit testimony was not sufficient to satisfy the attesting witness requirements of section 59. *Id.*

Thus, DeLeon asserts that based on our holding in *Iversen*, we cannot "sanction" the *James* rule as it would amount to substantial compliance. We disagree. In this case, unlike in *Iversen*, two attesting witnesses *signed* the will in the presence of Pruitt. And if Pruitt in fact signed the will at the same time and place and as part of the same transaction, then the section 59 requirements were satisfied. *See James*, 573 S.W.2d at 289. We decline the invitation to extend our holding in *Iversen* to the facts of this case. The *James* rule governs our analysis. *See id.*

### C. Analysis

The evidence attached to DeLeon's motion for summary judgment includes the affidavit and deposition testimony of Notary Hall as well as the affidavit of Witness Hall. Notary Hall stated in her deposition that sometime during the morning on February 6, 1991, Pruitt asked her to type up the will. Notary Hall stated in her affidavit that Witnesses Lunsford and Hall signed the will at separate times and that Pruitt would come out of her office and witness them sign the will. Notary Hall also stated in her affidavit that all four individuals got together in Pruitt's office to witness Pruitt sign the will. Further, Notary Hall testified in her deposition that all of this was done by lunchtime on February 6, 1991.

Witness Hall stated in her affidavit that after she and Witness Lunsford signed the will, they all met together later in Pruitt's office to witness Pruitt sign the will. She then stated that Notary Hall signed the will in the presence of all four individuals.

Walker attached to his response the same evidence as described above in De-Leon's motion [2] but also included Witness Lunsford's affidavit and deposition testimony. Witness Lunsford's affidavit is essentially the same as Witness Hall's affidavit in that Witness Lunsford stated that *after she and Witness Hall signed the will,* the four individuals later met in Pruitt's office to witness Pruitt sign. Witness Lunsford went on to state that she, Witness Hall, and Pruitt witnessed Notary Hall sign the will. Witness Lunsford's deposition testimony, however, is slightly different. The following are three excerpts from that deposition:

Q: You signed it and [Witness Hall] signed it and then [Pruitt] signed it?

A: Uh-huh.

Q: Was [Notary Hall] present during your signature?

A: Yes.

Q: Was she present when [Witness Hall] signed it?

A: Yes, sir.

Q: Was she present when [Pruitt] signed it?

A: Uh-huh.

Q: Okay.

A: We were all three there—well, all four of us with [Pruitt] and *we were altogether and we all signed it.* (Emphasis added).

Q: So you were present when [Pruitt] signed?

A: Yes, sir.

Q: You signed it?

A: Uh-huh.

Q: And then did [Witness Hall] sign it or did it just not go in any particular order?

A: I don't think it went in any particular order. Well, we signed it before [Pruitt] did because when we got through signing it, [Pruitt] said now I got to have my John Henry [sic] down here.

Q: As I understand [it,] your testimony is that you believe that you signed it before [Pruitt]?

A: Yes, sir, I do.

Q: And did [Witness Hall] sign it before [Pruitt] as well?

A: I think so.

Q: Did [Notary Hall] sign it before [Pruitt]?

A: I couldn't say about that one.

Q: Why is that?

A: Well, we was all in there talking and things and I answered a phone and I don't know what the phone was—probably something [sic] wanting an appointment, but anyway when I looked back down and was back talking to them again, well, they had all signed. I can't say when they signed it, *they signed it with us in there, though, we was all in there together.* (Emphasis added).

Assuming without agreeing that De-Leon met her initial burden of demonstrating that she is entitled to judgment as a matter of law, Walker responded with summary judgment evidence raising a fact issue as to the events surrounding the execution of the will. Witness Lunsford stated in her deposition that "we were al-

---

**2.** Walker attached a corrected version of Notary Hall's deposition, in which she stated that after Witnesses Lunsford and Hall signed the will, they all met later in the day in Pruitt's office to witness Pruitt sign the will.

together and we all signed it." This statement raises a fact issue as to whether all the signatures occurred at the same time and place and formed parts of the same transaction. While this statement is the most definitive statement evidencing that the entire process was substantially contemporaneous, the second and third excerpts set forth above also present facts regarding the will execution that a reasonable trier of fact could interpret as having occurred at the same time and place as part of the same transaction. From the testimony in the second excerpt, a trier of fact could determine that Pruitt signed the will immediately after the attesting witnesses. Likewise, the testimony in the third excerpt appears to place all the individuals in the same room near the time that all the signatures occurred. Thus, considering witness Lunsford's deposition testimony, we cannot say that no genuine issue of material fact exists and that DeLeon was entitled to judgment as a matter of law. Accordingly, we hold that the trial court erroneously granted summary judgment, and we sustain Walker's first issue.

### IV. ADMINISTRATION OF THE ESTATE

In his second issue, Walker argues that if the summary judgment is reversed and the case remanded for further proceedings concerning whether the will was executed at the same time and place and as part of the same transaction, then the order appointing DeLeon as administrator of the estate should also be reversed pending a final determination by the trial court regarding the execution of the will. We agree.

The trial court's order granting administration and appointing DeLeon as administrator is predicated on the finding that Pruitt died without leaving a lawful will. Thus, because we have sustained Walker's first issue, we hold that the trial court also erred by granting administration of the estate and appointing DeLeon as administrator of the estate. Accordingly, we sustain Walker's second issue.

### V. CONCLUSION

Having sustained both of Walker's issues, we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.