No. 28,089.

CALVIN M. KITCHELL et al., *Appellees*, v. ELIZABETH BRIDGEMAN, as the Sole Heir at Law of Samuel N. Bridgeman, Deceased, et al., *Appellants*.

(267 Pac. 26.)

Opinion filed May 5, 1928.

*Z. T. Hazen, P. H. Coney, T. M. Lillard, Bruce Hurd* and *O. B. Eidson,* all of Topeka, for the appellants.

*Frank G. Drenning,* of Topeka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to set aside a will signed by John W. Kitchell, by which he gave all of his property to Samuel N. Bridgeman. Its validity was challenged by the plaintiffs, who were his brothers and sisters, or the heirs of those who stood in that relation to him. The will was assailed on several grounds, only one of which was sustained by the court. That ground was that the will was not attested and subscribed in the presence of the testator by the witnesses. It was adjudged that the will and the order of probate be canceled and set aside.

Kitchell was a veteran of the Civil War and for years had been drawing a pension from the United States government of $50 per month. Prior to the execution of the will he had accumulated from his savings a number of bank certificates of deposit, amounting to $2,200. He became ill in October, 1924, and went to the National

Soldiers' Home at Leavenworth, and was received and cared for in the hospital of that institution. The ward to which he was admitted is a large room containing some twenty-eight beds, and he occupied a bed in a small room or inclosure in the corner of the general ward, where he remained until the time of his death on December 23, 1924. During his stay in the hospital he told his physician that he wanted to make his will, and in accordance with the custom of the home the physician communicated this request to Captain Berry, the chaplain of the institution. Berry visited him a number of times and discussed the making of the will, but the draft of the will made by Chaplain Berry was not satisfactory to him. Bridgeman, who had been a long-time friend of his, was asked to bring to him his certificates which had been deposited in a vault in Topeka, and a few other articles. When they were delivered to him he expressed the desire to give all of them to Bridgeman and asked him to send for J. C. Conly, a lawyer of Wichita, to prepare his will. Kitchell had previously told Conly that he was going to leave his property to Bridgeman. Conly prepared a will, went to the hospital and there read the will to Kitchell, which he had prepared, and Kitchell said that it was all right. The will was then signed by the testator in the presence of Conly and H. L. Stocks, the witnesses who saw the testator sign the will. The finding of the court respecting the attestation of the will by the witnesses, the location of the room in which Kitchell was and the place in which witnesses signed the will, was found to be as follows:

"The dimensions of the room referred to above, occupied by John W. Kitchell, were twelve and one-half feet north and south by nine feet east and west. In the north wall, opening from the general ward was a door three feet wide, the west side of which was about one foot from the west wall. When the will was signed as above described, Kitchell lay on a bed standing with one end against the north side of the room. The west side of the bed came up to the east casing of the door opening into the general ward. Kitchell lay with his head to the north, in front of the door, and just inside the room, a screen was usually kept for the purpose of obstructing a view into Kitchell's room from the general ward, but which was usually set back away from the bed when visitors entered the room, and at the time of the signing of the will stood back from the bed so that Kitchell's view from the room was not obstructed. There was no unoccupied table in the room, but in the general ward was a nurse's table, standing, at the time of the execution of the will, about two and one-half or three feet west of the west wall of Kitchell's room, and about nine feet back from the north wall of the room, making the same a

little over nine feet from the door. The table was in such a position that it was impossible for Kitchell to see the same. After the will was signed by the testator as above described, the witness Conly immediately took it from the testator and carried it to the nurse's table, where he and the other witness, Stocks, affixed their signatures to the same as witnesses, sitting down to do so at the north side of the table and facing the south wall of the general ward. After this was done, Conly took the will into Kitchell's room, but did not read or exhibit the same to him or show him the signatures of the witnesses. The will was taken away by Conly, who brought the same to Topeka, where he handed it over to Samuel N. Bridgeman.

"Kitchell did not see the witnesses to the will at the time they were affixing their signatures to the same, nor the will itself or the signing of the same, and from the position he occupied it was impossible for him to do so."

Shortly after the death of Kitchell the will was presented to and admitted to probate in the probate court, which found that it had been duly executed. The plaintiffs contested the will upon the grounds of incapacity of the testator to make a will, undue influence in procuring its execution and that its execution had not been duly attested. The trial court found:

"At the time Kitchell executed his will he was of sound mind, fully conscious, realized what he was doing and the consequences of his act, and desired and fully intended by the execution of his will that the defendant, Samuel N. Bridgeman, should have all of his property after his death."

Upon the question of undue influence the court found:

"At no time was Samuel N. Bridgeman in any fiduciary or confidential relation with the testator and no undue influence was brought to bear upon the testator by Bridgeman or anyone acting in his behalf to induce the execution of the will by the testator."

The court, however, concluded that the will should be set aside for the single reason that it was not attested and subscribed by the witnesses in the presence of the testator. The statute relating to execution and attestation of a will provides:

"Every last will and testament except such as is mentioned in section 69 of this act, shall be in writing and signed at the end thereof by the party making the same or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." (R. S. 22-202.)

In the instant case the will was duly signed by a testator who was of sound mind, fully conscious, realized that he was making a will and the effect of his act. It was done in the presence of the witnesses who saw him sign the will. The witnesses signed their names

at a table just outside the door of his room, there being no table in his room, and only about nine feet away from him. The testator did not see the witnesses subscribe their names, nor were they within the line of his vision when it was done. It appears that the will was attested immediately after it was signed by the testator and then brought back into the room where he was. It was in fact a single transaction. The question is whether in this proximity and under the circumstances mentioned the will was signed by the witnesses in the presence of the testator. It is argued that it cannot be said to have been signed in the presence of the testator because it was outside of the room in which he lay and because he did not see them in the act of subscribing their names. The statute does not require that the attestation shall be in the same room where the testator is, nor that he shall watch them as they attach their names to the will. All that is required in that respect is that it shall be in such proximity that it can be said to have been signed by them in his presence. Some courts interpret the requirement that a will must be attested in the presence of the testator with great strictness, and hold that if the witnesses sign the will in the same room but out of the sight of the testator it is insufficient. Some hold that a will is not duly attested where it was signed by the witnesses in another room with an open door, however close to the position of the testator. Still others hold that an attestation, whether in or out of the room occupied by the testator, is not valid unless there is an unobstructed view between him and the witnesses. Some of the courts are more liberal and less technical in the interpretation of the requirement and place more importance on the purpose of an attestation and a substantial compliance with that purpose. The purpose, it is said, is to prevent the fraudulent switching or substitution of a surreptitious will. It has been said that:

"The object of the provision of the statute requiring that the witnesses sign in the presence of the testator is to prevent imposition. The requirement of the statute, therefore, is met if the testator understands what the witnesses are doing when they affix their names to his will, and may, if so disposed, see them while signing. It is the result as a whole that controls, and not the mere matter of juxtaposition." (*Bullock v. Morehouse*, 19 Fed. [2d] 705, 708.)

The diversity of judicial opinion upon the question is well illustrated in an extended annotation in L. R. A. 1916C, 950, in which it is said:

"The strict rule that the attestation must be in such a position that the

testator may see it if he so desires has been modified in several cases, and wills attested in a room adjoining that in which the testator lay in such a situation that he was not able to see the attestation sustained. The statutory requirement that the will must be attested in the presence of the testator is treated as not necessarily implying that the testator and the witnesses must be in the same room, nor that actual sight or inspection of the process is peremptorily required; that where the facts are such that a complete security against fraud and imposition is shown, a liberal construction will be given to the requirement of the statute." (p. 959.)

This court having in mind the purpose of the statutory requirement has taken the liberal view of presence and absence, and where it is clear that there was no imposition, no substitution of a surreptitious will and no intention to do other than attest the will which they had seen executed, a substantial compliance is enough and slight or trifling departures from technical requirements will not operate to defeat a will. In *Smith v. Holden,* 58 Kan. 535, 50 Pac. 447, one of the witnesses to the will did not see the testatrix sign the instrument, but did see the signature after it was written. Another witness saw the testatrix sign the will but could not say that she signed it in the presence of the testatrix. We said:

"These departures from the technical requirements of the statute are trivial. The witnesses were all in attendance upon the sick woman; if not at all times within her sight and hearing, they were within the circle and contiguity of her presence. Because a person in attendance upon another, during the execution and attestation of a writing with which they are both concerned, happens for a moment to step into an adjoining room, while some act in the process of certification is performed—an act contemplated by both of them and necessary to accomplish their mutual purpose—and, returning, finds the act done, they cannot be said to be without each other's presence." (p. 543. See, also, *Colman v. Lindley,* 115 Kan. 802, 224 Pac. 912.)

We think the same view should be taken in the interpretation of the will in question. While the witnesses affixed their names outside of the room and out of the line of his vision, it was done within a few feet of where he was lying. The witnesses and some others had gone to the hospital for the execution and attestation of the will. The testator understood the purpose of the meeting and participated in the operation. His mind was sound, he was conscious of what was going on and knew that the witnesses had moved three or four feet over to a table to attest the will, which he had just signed while they stood by his bedside. The execution and attestation may well be considered as a single transaction and can be said to have been done within his hearing, knowledge and understanding. The prox-

imity and the circumstances were such that we feel compelled to hold that the certification of the will was made in the presence of the testator. The judgment will therefore be reversed and the cause remanded with directions to enter judgment in favor of the defendant.

HARVEY, J., dissenting.