No. 37,717

In the Matter of the Estate of Rosella Davis, Deceased. MABEL
BARNES and CHARLES E. LEIERER, and FLOYD BARNES as Executor
of the Last Will and Testament of Rosella Davis, Deceased, *Appellants,* v. SUSIE LEIERER, CLAUDE CHARLES LEIERER, CLYDE
OSCAR LEIERER, BESSIE GLADYS GRAY, CLYDE FISHER, JESSIE FAY
FISHER, RUBY SUGGS, RALPH J. MCPHEARSON, CALVIN LEIERER,
ALICE RICE, NETTIE BACON, DEWEY LEIERER, CLARENCE LEIERER,
FRANCIS LEIERER, BLANCHE CHANEY, MARIE GENTRY, JOHN MC-
PHEARSON, WILLIE H. MCPHEARSON, and the Surviving Widow, if
any, and Descendants of one Nicholas Leierer, Deceased, *Appellees.*

(212 P. 2d 343)

Opinion filed
December 10, 1949.

*H. W. Stubbs* and *W. P. Wesley,* both of Ulysses, were on the briefs for appellants.

*Logan N. Green, Roland H. Tate* and *Daniel R. Hopkins,* all of Garden City,
were on the briefs for appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from an order of the district court
denying probate of a written instrument purporting to be the last
will and testament of a decedent.

The only question presented is whether one of the subscribing witnesses heard the testatrix "acknowledge the same," in compliance with the statute.

The purported will is as follows:

"THIS IS MY LAST WILL

"First—I want all bills my paid—

"Second—I appoint Floyd as executor of my estate, without bond.

"Third—I want Bood to buy the Ryus quarter at $25 per acre.

"4th—I want each of the heirs of John, Mary and Daisy to receive ($1000.) one thousand dollar each minus what they owe me. Ralph $75. Ruby owes $135.

"5th.—Brother Charlie to have my old home on SE Corner of block. Charlie to have my Car. Mabel to have my present home and green house & lots. Balance of my estate to be divided equally between Mabel & Charlie.

"ROSELLA DAVIS

"WITNESSED—EMMA E. NIQUETTE R. N.

"WITNESSED—ELEANOR SCHROLL R. N."

Rosella Davis, the testatrix (hereinafter referred to as Mrs. Davis), was a widow about seventy-eight years of age and lived in Ulysses. In the fall of 1947 she sustained a fractured hip and was taken to a hospital in Garden City where she died on December 27, 1947. Her heirs-at-law included a sister, Mabel, a brother, Charles, and a large number of nephews and nieces. One Barnes, a son of Mabel, operated a drugstore at Lakin, about twenty-five miles west of Garden City. He had been reared in Ulysses, however, was on very friendly terms with his aunt, and visited her frequently while she was confined in the hospital. On one such visit Mrs. Davis asked him if he would write her will on his next visit and he consented to do so. His next visit was on November 25, 1947, on which occasion the will was written. At the hearing in the probate court on the petition to admit the will to probate Barnes testified that on the day in question Mrs. Davis asked him to get some paper as she wanted to dictate her will. He secured a sheet from a desk drawer in the hospital room, seated himself beside her bed and wrote down what she dictated to him. The only other person present was one of Mrs. Davis' nurses, a Mrs. Niquette, who was in and out of the room. At that point lunch was brought in to Mrs. Davis and the writing, not yet completed, was left lying on the bedside table. After lunch it was completed, he read it back to her, then handed it to her to read and she said it was what she wanted. She then signed the instrument in the presence of Barnes

and nurse Niquette, after which there was some conversation between the latter two, in the presence of Mrs. Davis, regarding the necessity of two witnesses to her signature. Nurse Niquette suggested that they call in a Miss Schroll, another registered nurse on duty in the hospital. She then stepped out of the room into the hall where she met nurse Schroll and together they entered the room, nurse Niquette saying to Mrs. Davis, "Here is your friend, Miss Schroll, who is going to sign the will with us."

Barnes further testified:

"A. Miss Schroll, when she came in, in her usual manner she greeted Aunt Rose, and Aunt Rose in turn greeted her. Mrs. Niquette told Aunt Rose, 'Here is your friend Miss Schroll to sign your will with us.' I had the bedside table sitting there, and this will was still on it, and this metal nurse's chart that I had been writing on. The pen was lying there on the table, and I gave the pen to Mrs. Niquette, she signed the will, she handed me back the pen, I then handed it to Miss Schroll, she signed the will and handed me back the pen, and I put the pen away, and I think that is perhaps the end of that procedure, unless Miss Schroll, before she left, greeted Aunt Rose again, or something of that nature."

Nurse Niquette testified that she had attended Mrs. Davis in the hospital; that she recalled the day in question, the circumstances of Barnes preparing the will and that she heard Mrs. Davis say "it is just as I wanted it"; that after Mrs. Davis, being propped up in bed, signed it in the presence of Barnes and her there was a discussion between the latter two, in the presence and hearing of Mrs. Davis, concerning witnesses and she then went out of the room to get nurse Schroll as a witness. That nurse Schroll and Mrs. Davis were former neighbors in Ulysses, were well acquainted with each other and that she, nurse Schroll, had visited Mrs. Davis almost daily in the hospital; that when she and nurse Schroll entered the room she said to Mrs. Davis, "Here is your friend to witness the will," whereupon Mrs. Davis looked up and smiled and waved her hand, as was her usual custom when any friend came in; that the will was still lying on the bedside table and that she and then nurse Schroll signed the will as witnesses in the presence of Mrs. Davis and Barnes. The witness further testified that at the time in question Mrs. Davis was of sound mind and memory, recognized friends readily, could see well and was mentally alert. She identified the instrument in question and the signatures of Mrs. Davis, nurse Schroll and herself.

Nurse Schroll testified that she had formerly lived across the street from Mrs. Davis in Ulysses; that they were well acquainted

and good friends, and that she had visited Mrs. Davis in her hospital room at least once or twice a day, although she was not her regular attending nurse; that on the day in question, while she was out in the hall of the hospital, nurse Niquette asked her if she would witness Mrs. Davis' will; that upon entering the room with nurse Niquette the latter said to Mrs. Davis, "Here is Miss Schroll to sign your will with us"; that Mrs. Davis raised her hand, recognized that she was there and in response to her question as to how she was feeling replied, "about the same"; that the instrument had already been signed by Mrs. Davis, but that she didn't see her sign it and that she and nurse Niquette signed as witnesses in the presence of each other and in the presence of Mrs. Davis and Barnes; that the will was lying in plain sight on the bedside table in front of and to the side of Mrs. Davis, who was propped up in bed and could see all that was going on. She further testified that at the time in question Mrs. Davis recognized her as "one of the Schroll girls"; that she was mentally competent and realized and comprehended what was being done. The witness identified the instrument in question and the signatures attached thereto.

Doctor Brewer, who was Mrs. Davis' physician, testified that he had known her since childhood; that he had seen her frequently while she was in the hospital, including November 25, 1947; that on that date she was of sound mind and memory, mentally alert, able to recognize friends and acquaintances and competent to make a will.

The contestants offered no evidence, but demurred to the evidence of proponents as above set out "for the reason that said evidence is insufficient to properly prove the will."

The probate court found that the will was duly executed in the manner provided by law and admitted it to probate as and for the last will and testament of the decedent, whereupon the contestants perfected their appeal to the district court.

In the district court it was stipulated by the parties that the cause would be submitted "upon the transcript of the record from the Probate Court of Grant County, Kansas, heretofore filed herein, and upon a transcript of the testimony had and presented before the Probate Court of Grant County, Kansas, at the hearing had on the petition on the 20th day of February, 1948."

The district court found against the proponents of the will and denied probate, the pertinent portion of the journal entry of judgment being as follows:

"And the Court thereupon announces that it finds, under all of the evidence, that the instrument attached to the petition as Exhibit 'A' and offered for probate as the last will and testament of Rosella Davis, deceased, should not be admitted to probate, for the reason that the same was not shown to have been executed in strict compliance with the provisions of the statute, and for the reason that the petitioner has failed to meet the burden of proof and to establish said instrument as being the last will of Rosella Davis, deceased."

Motion for a new trial being overruled, proponents appealed to this court.

The written defenses filed in the probate court set out a number of grounds in opposition to the admission of the will to probate, but in this court the parties have limited the issues and agree that the only question is whether the witness Schroll heard the testatrix "acknowledge the same," in compliance with the statute, G. S. 1947 Supp. 59-606, which is as follows:

"Every will, except an oral will as provided in section 44 [59-608], shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

Thus it will be seen that the proponents have the burden of showing that the testatrix signed the will at the end thereof and that it was attested and subscribed in her presence by two or more competent witnesses who either saw her subscribe or heard her acknowledge the same. It is of course conceded that Mrs. Davis signed it at the end thereof; that the witness Niquette saw her do so and that both of the witnesses subscribed in her presence. But the evidence shows that the witness Schroll did not see Mrs. Davis sign the will and the question therefore is—did this witness hear her *acknowledge* the same?

Since the trial court heard this case solely on the transcript of the record and evidence introduced in the probate court, the ordinary rule governing appellate review in this court does not prevail and we are in as good a position as the trial court to draw our own conclusions from the evidence introduced and to determine what the facts establish. *In re Estate of Kemper,* 157 Kan. 727, 145 P. 2d 103.

Appellees (contestants below) rely on a strict and literal construction of the governing statute and argue that since witness Schroll did not *see* Mrs. Davis sign then it was necessary for her to *hear* her acknowledge the same, which they contend could not have taken

place for the very good reason that Mrs. Davis at no time *said* to witness Schroll, or in her presence, that it was her signature or that the writing was her will. They argue that the statute makes *hearing* the testatrix acknowledge her signature or that it is her will the *only* substitute for *seeing* her sign; that the use of the word "hear" in the statute can only mean the use of one's vocal cords in speaking words, and our attention is directed to language contained in the quite recent case of *In re Estate of Bond,* 159 Kan. 249, 153 P. 2d 912, where it was said:

". . . We prefer this strict construction of the statute to one which would tend to break down the formalities with which our legislature has seen fit to cloak the passing of property by devise. . . . The witnessing of a will is just as essential as writing and signing at the end. It is a solemn ceremony, involving the assembling of qualified persons who must perform prescribed acts under prescribed conditions, . . . It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute, than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

and to *In re Estate of Charles,* 158 Kan. 221, 146 P. 2d 395, as authority for their position that nothing less than a *literal* compliance with the statute will effectuate its purpose.

Appellants' (proponents below) argument is based on the premise that an acknowledgment need not consist of formal spoken words, that it may consist of conscious acts and conduct of a testator, and that if witnesses subscribe as such at his implied request such request to them to do so necessarily includes in itself an admission to them that the instrument is his.

Some point is made in the briefs whether the last two words of the statute, "the same," refer to a testator's signature or to the instrument itself as being a will, but we do not consider it necessary to draw such a fine distinction for the reason that under the facts of this case Mrs. Davis either "acknowledged" *both* her signature and the fact that it was her will to witness Schroll—or she did not.

Few questions, if any, down through the years have given rise to more textbook authority and adjudicated cases than those pertaining to the devise of property by will, and while there is considerable variance in the statutory requirements among the several states pertaining to the execution of wills, it may be said, as a general rule, that all of the authorities are to the effect that strict com-

pliance with the statute is required. The difficulty arises in the determination of what constitutes strict compliance.

Our statute pertaining to the execution and attesting of wills does not require publication or that the subscribing and attesting witnesses actually know that the instrument is a will. *In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544; *In re Estate of Randall,* 167 Kan. 62, 204 P. 2d 699. Publication is the act of making it known in the presence of witnesses that the instrument to be executed is the last will and testament of the testator. But even in those jurisdictions which require that a will be published the general rule is:

"Generally speaking, any communication of a testator's intent to give effect to a paper as his will, whether by word, sign, motions, or conduct, is sufficient to constitute publication. In other words, the requirement that a will be published which is imposed by statute in some jurisdictions, is satisfied if the testator, by word or deed, clearly indicates to the witnesses that the instrument is his last will and testament." 57 Am. Jur., Wills, § 283, p. 219.

And neither does our statute require a testator to sign in the presence of the subscribing witnesses. Touching this point, the general rule, with reference to acknowledgment, is:

"In the absence of a statute which requires that the manual operation of signing a will be performed by the testator in the presence of the subscribing witnesses, it is not essential to the due attestation of a will that the witnesses be present when the will is actually signed by the testator. An acknowledgment of his signature by the testator in the presence of the attesting witnesses suffices to render the attestation a witnessing of the execution of the will by the testator. . . . Generally speaking, an acknowledgment of his signature by a testator, whether in his own handwriting or not, need not be formal, nor in any set form of words. It may be by acts or conduct, provided the testator indicates to the witnesses, with unmistakable certainty, that the signature is his." 57 Am. Jur., Wills, § 298, pp. 229, 230.

See, also, the case of *Reed v. Hendrix's Exor.,* 180 Ky. 57, 201 SW 482 (cited as *Reed v. Whaley,* L. R. A. 1918E, 423) where, under a statute similar to ours, it was held in substance that a will is sufficiently acknowledged by a testator if the witnesses are asked in his presence if they had come to sign the will, followed by an immediate affirmative answer and attestation of the instrument by them in testator's presence, and 68 C. J., Wills, § 363, p. 699, where it is said:

"It is not necessary that the testator should by his own words acknowledge the signature, but the words of acknowledgment may proceed from another and will be regarded as those of the testator if the circumstances show that he adopted them and the person speaking them was acting for the testator with his assent."

In Thompson on Wills, Third Edition (1947), § 125, p. 199, dealing with the question of acknowledgment, the rule is stated:

"No particular form or method of acknowledgment of his signature is required of the testator. It is sufficient if he exhibits the instrument with his signature thereon to the witnesses and refers to it as his will. Where a testator requests the witnesses to attest his will, this is sufficient to authorize the inference that he had executed the paper as a will, and is equivalent to an acknowledgment that he had signed the paper as a will. Such request need not be made by the testator personally, but it will be sufficient if made by another and acquiesced in by words or acts of the testator."

and again in Atkinson on Wills, § 123, p. 277 (on the question of sufficiency of testator's request to witnesses to sign):

"The courts agree that the request need not be an express oral one. It may be implied from what the testator says or does. A signing by the witnesses with the testator's consent, or with his knowledge and approval may be considered an implied request. A request to the witnesses by the attorney who drew the will, or by some other person, acquiesced in by the testator is sufficient."

See, also, *Smith v. Holden,* 58 Kan. 535, 50 Pac. 447; *Colman v. Lindley, Administrator,* 115 Kan. 802, 224 Pac. 912, and *Kitchell v. Bridgeman,* 126 Kan. 145, 267 Pac. 26, for a discussion of the general subject matter.

As applied to the facts of this case we think the language in the Bond case, *supra,* and the holding in the Charles case, *supra,* are not of much help to appellees. In the former the question was whether the alleged will had been signed at all by the testator—and it was held it had not, which of course left no room for a construction of the statute which provides that every will shall be signed at the end thereof by a testator. With respect to the Charles case we will not detail the facts, but appellees attempt to get more help from it than its facts and circumstances justify.

There is no need again to summarize the evidence brought out in the hearing in the probate court. We think it is clear, beyond all doubt, that Mrs. Davis, by her conscious acts and conduct, "acknowledged" to the subscribing witness Schroll that the instrument in question was her will and that she had signed it. To state our reasons would be to quote the testimony. True, a skilled attorney, under the circumstances, would have been prompted to say to Mrs. Davis when nurse Schroll entered the room, "Is this your will and is that your signature?", or words to that effect—but, do the absence of such or similar statement and affirmative reply by Mrs. Davis

bring about the result sought by appellees? We think not. In so holding we do not mean in any way to relax the rule of "strict compliance" laid down in the Bond case, *supra,* but under all the facts and circumstances we are of the opinion the statute was complied with in this case.

It therefore follows that the judgment of the lower court is reversed with directions to admit the will to probate.