No. 43,376

In the Matter of the Estate of Henry H. Weber, Deceased. BEN HEER, Executor of the Estate of Henry H. Weber, Deceased, *Appellee,* v. R. R. BENNETT, Guardian of the Person and Estate of Rosa Weber, an Incompetent Person, et al., *Appellant.*

(387 P. 2d 165)

Opinion filed December 7, 1963.

*Charles D. Green,* of Manhattan, argued the cause, and *Richard C. Wells* and *Charles S. Arthur,* of Manhattan, were with him on the briefs for the appellant.

*Richard D. Rogers,* of Manhattan, argued the cause, and *John F. Stites,* of Manhattan, *C. L. Hoover* and *Robert A. Schermerhorn,* of Junction City, were with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a proceeding to admit a document to probate as the last will and testament of Henry H. Weber. The facts are undisputed and are substantially as follows:

Henry H. Weber, the decedent, died November 21, 1960. At the time of his death he was seventy-three years of age, lawfully married to Rosa Weber, who had been adjudicated an incompetent person, and who, on the above-mentioned date, was, and had been for several years prior thereto, hospitalized at Topeka State Hospital.

Shortly after 12:00 p. m. on November 16, 1960, Henry Weber went to the home of Ben Heer in Riley. Mr. Heer was not at home but his wife was, and Mr. Weber advised Mrs. Heer he was ill and needed help to get into the hospital. He stated he wished to go to the Riley County Hospital in Manhattan. Mrs. Heer telephoned the hospital and made arrangements to have Mr. Weber admitted.

After arrangements were completed Mrs. Heer offered to put Mr. Weber's clothes in a suitcase and otherwise help him prepare to go to the hospital. Next, she called a neighbor who in turn went to where Mr. Heer was working, which was about four miles from Riley, and told Mr. Heer that Henry Weber was at Heer's home and wanted to see him. Heer went immediately to his home. When he arrived Weber advised Heer of his illness and of his desire to make a will leaving one-half of his estate to his wife and one-half to his niece, Lillian Price. Heer and Weber then decided to go to see Harold Holmes, president of the Riley State Bank, to have the will prepared.

The distance from the Heer residence to the bank was three or four blocks. The two men drove to the bank, each in his own automobile. Mr. Weber parked his car at an angle against the curb of the street and beneath a window on the north side of the bank and asked Mr. Heer, who had parked on the east side and had come over to the Weber car, to see if Mr. Holmes would come out to the car and talk to him. Weber remained in his car and Heer went into the bank and talked to Holmes who then came out and got into the front seat of Weber's car. At Weber's request Heer got into the back seat of the automobile. It was a chilly November day and the car windows were kept closed. Weber explained to Holmes how he desired to dispose of his property, one-half to be left to his wife and one-half to his niece, and that he wanted Heer to be his executor. Holmes took notes as Weber talked. After Holmes concluded taking notes he went back into the bank and prepared the purported will on a printed form captioned "Last Will and Testament" by filling in a portion of the blank spaces thereof with the information contained in the notes he had made, except that he failed to mention Weber's wife in the purported will.

The third paragraph of the will reads:

"Third. I give, devise and bequeath to *My Niece, Lillian Price of Junction City, Kansas My share of land situated in the Eureka Valley in Ogden and Manhattan Townships also My share of all Real estate located in Madison Township, Riley County Kansas* and I do devise and bequeath all the rest and residue of my estate both real, personal and mixed to *My Niece Lillian Price, any and all, money, stocks or Bonds, any and all personal property which I may possess at my death, whatsoever.*"

The italicized portion of the above quotation was that part typed from Holmes' notes onto the printed will form.

While Holmes was inside the bank he directed three bank em-

ployees, Mr. and Mrs. Chamberlain and Mrs. Carlson, to go to and stand in front of a closed window in the bank in order that they could serve as witnesses to the signing of the will. The window was approximately eight to ten feet from where Weber was sitting in his closed automobile.

About fifteen minutes later Holmes returned to Weber's automobile with a clipboard to which the purported will was fastened. Holmes re-entered Weber's automobile and handed the document to him. Weber read the document, Holmes and Heer being in the automobile at this time.

Holmes and Weber having previously discussed the need for witnesses, Holmes directed Weber's attention to the window of the bank where the above-named bank employees were standing. By waving to them, Weber indicated he saw them, and they in turn waved back to him. After looking the purported will over, Weber placed the clipboard on the steering wheel of his automobile where it could be seen through the closed windows by the witnesses, and signed the document.

Holmes then returned to the bank with the document, and there, standing before the bank window as heretofore described, the witnesses signed their names. The table upon which the signing occurred was against the window but the table top was a foot to a foot and a half beneath the window sill. Hence Weber could see the witnesses in the window as they signed but could not see the pen or the purported will on the table at the time of signing. Only that portion of the body of each witness in the window could be seen by him.

After the three witnesses signed the purported will Holmes took it back out to Weber's automobile, showed it to him, Weber looked it over, and at Weber's request Holmes retained the document at the bank.

The record disclosed that all three witnesses were acquainted with Weber prior to November 16, 1960, and knew his signature when they saw it. They recognized Weber's signature on the purported will. However, none of the witnesses could read any of the writing or printing on the document while it was being signed by Weber in his automobile.

It is noted from the record that at no time was there any type of communication between Weber and the witnesses other than their waving to one another; no verbal communication whatsoever. Weber never entered the bank building during this period of time

and heard nothing of what was said inside the building; and even more important, the witnesses never left the building, so they couldn't possibly have heard any of the conversation that occurred in Weber's automobile.

The transaction at the bank took approximately one to one and a half hours to complete. Weber then proceeded to drive his automobile, unaccompanied, approximately twenty miles to the Riley County Hospital where the earlier admittance arrangements had been made, and it was there on November 21, 1960, just five days later, he died.

At the conclusion of the evidence the trial court made findings of fact and concluded as a matter of law that the will was duly executed by the decedent and attested by two competent witnesses in conformity with the provisions of G. S. 1949, 59-606; that it was a valid will of the decedent and should be admitted to probate as the last will and testament of Henry H. Weber, deceased; and entered judgment accordingly.

From an order overruling his motion for a new trial, R. R. Bennett, guardian of the person and estate of Rosa Weber, an incompetent person, has appealed.

The determinative question in this case is whether or not the purported will was duly executed and attested in accordance with the provisions of G. S. 1949, 59-606, which reads:

"Every will, except an oral will as provided in section 44 [59-608], shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

The mentioned statute, insofar as is pertinent to the issues involved, contains the following elements: (1) The will must be attested and subscribed by two competent witnesses in the presence of the testator; (2) the witnesses must have either seen the testator subscribe or have heard him acknowledge the will. It is apparent that the statute clearly requires two essential factors: (1) presence, and (2) sight or hearing. There must be presence and sight or presence and hearing. Presence only, sight only, hearing only, or sight and hearing only are not sufficient. It is quite possible that one could see a testator subscribe to his will, *i. e.*, by television, or one could hear the testator acknowledge his will, *i. e.*, by telephone, but in either instance the witnesses would not be in the presence of the testator as contemplated by our statute. Conversely, one could

be in the testator's presence and yet not see him sign or hear him acknowledge his will. The witnessing of a will is a matter of great importance and solemnity, and this is especially so because dispute about it does not arise until the testator's lips are sealed. (*Rice v. Monroe*, 108 Kan. 526, 527, 196 Pac. 756.)

In *In re Estate of Bond*, 159 Kan. 249, 252, 153 P. 2d 912, we stated:

"The fact is that aside from an oral will, as provided in G. S. 1943 Supp., 59-608 there is only one way to make a will in Kansas and that is by signing in the presence of two witnesses who saw the testator sign or heard him acknowledge it."

In *Fuller v. Williams*, 125 Kan. 154, 163, 264 Pac. 77, this court stated:

"One who attests and subscribes a will as a witness should do so with the understanding that he is competent to testify on the probate of the will that the testator had mental capacity to make a will and was not under restraint or undue influence. (*Lawrie v. Lawrie*, 39 Kan. 480, 18 Pac. 499; *Hospital Co. v. Hale*, 69 Kan. 616, 619, 77 Pac. 537; *McConnell v. Keir*, 76 Kan. 527, 531, 92 Pac. 540.) The attesting witnesses to a will must not only witness the signing or publishing of it by the testator, but it is also their duty to satisfy themselves that the testator is of sound and disposing mind and memory and capable of executing a will. (*Smith et al. v. Young et al.*, 134 Miss. 738; *In re Swan's Estate*, 51 Utah, 410.) 'A witness to a will must . . . satisfy himself . . . of his (the testator's) testamentary capacity.' (40 Cyc. 1110; *Dunkeson v. Williams*, 242 S. W. 653 [Mo.]; Schouler on Wills, 6th ed., §§ 229, 514; Page on Wills, 2d ed., § 332; and see cases collected in annotation 35 A. L. R. 79.) This duty necessarily requires that the attesting witnesses to a will should know and understand that the instrument they are signing as witnesses is a will, and they should do so prepared to testify to the testamentary capacity of the testator, and that he is free from restraint and undue influence.

"We are aware there is a line of authorities to the effect that a witness to a will need not know whether he is witnessing a will or some other instrument, but we do not regard such authorities as being in accord with the duties required by an attesting and subscribing witness to a will under our statute, in accordance with the decision of our court."

In *In re Estate of Bond*, supra, it was stated that we prefer the strict construction of the statute to one which would tend to break down the formalities with which our legislature has seen fit to cloak the passing of property by devise. This strict construction rule was reaffirmed in the case of *In re Estate of Davis*, 168 Kan. 314, 322, 212 P. 2d 343. It is possible that at times an honest attempt to execute a last will and testament is defeated by the failure to include some one or more of the statutory requirements.

However, it is far more important that this should happen under a proper construction of the statute than that the individual case should be permitted to weaken the legislative mandate calculated to protect testators generally from fraud, duress, bad faith, over-reaching, or undue influence in the making of their wills. The right to make a testamentary disposition of property is wholly statutory and the testator's intent to execute a valid will is not by itself sufficient to give validity to an instrument not executed in accordance with the statutory requirements.

The proponent of the will (the executor) in his brief invites our attention to *Kitchell v. Bridgeman,* 126 Kan. 145, 267 Pac. 26. However, in that case the will was executed by the testator in his room before two witnesses who saw him sign the will. *In re Estate of Davis,* 168 Kan. 314, 212 P. 2d 343, is cited to us. In this case the testator signed in the presence of one witness and subsequently the second witness was brought into the room where the testator acknowledged to her and the witness signed in the testator's presence. The proponent also cites *Humphrey v. Wallace,* 169 Kan. 58, 216 P. 2d 781, where the witnesses did not see the testatrix sign but did in their presence hear her acknowledge her signature and that it was her last will and testament. Attention is invited to *Moore v. Glover,* 196 Okla. 177, 163 P. 2d 1003, where the testatrix handed the witnesses the will and stated that it was her will and requested the witnesses to sign as witnesses to her will. The witnesses clearly heard testatrix acknowledge it as her will, and after they signed as witnesses returned it to her. None of these cases supports the very liberal construction which the proponent wishes to place upon the statute under the facts of the instant case.

The statute was designed to require the attestation to be made in the presence of the testator so as to prevent the substitution of a surreptitious will. The testator must be able to see the witnesses attest the will; or, to speak with more precision, their relative position to him at the time they are subscribing their names as witnesses must be such that he may see them, if he thinks it proper to do so, and satisfy himself by actual view that they are witnessing the very paper he signed to be his last will. In the instant case there is evidence that Weber told Mr. Heer and Banker Holmes that he wanted one-half of his property to go to his wife and one-half to his niece. The document, as prepared, failed to mention the wife in any manner. It is further noted that Holmes took some time

in preparing the purported will, placed it upon a clipboard and then stationed three of his employees at the window and had them remain there while he took the instrument through the door and into the closed car where the witnesses saw Weber sign a paper, or document, which Holmes advised the witnesses was Weber's will. A statement by the person who supervises the execution of the document that it is the testator's will and the like does not amount to an acknowledgment by testator if he does not hear such statement. (2 Bowe-Parker: Page on Wills, § 19.115, p. 224.) The witnesses testified that there was no communication whatsoever between Weber and themselves. There is nothing in the record to show that the witnesses read the provisions of the purported will but only knew Weber's signature appeared thereon.

Appellee seems to place much stress upon conscious presence and substantial compliance. However, where the execution of a will in testator's presence is at issue, neither words nor intentions suffice. The rule is that the burden of proof rests upon proponent of a will to establish that the will was executed according to the provisions of the statute. To hold that the requirements of the statute were complied with in the instant case would subvert the purpose and intent of the statute and would amount to a disregard of its substance. Failure to halt here under the facts in the instant case would permit substantial compliance and conscious presence to run wild so that if in any given case the intention of the testator is ascertained his will may be sustained. Application of the rule of substantial compliance or conscious presence under the facts in the instant case is to ignore the statute intended to prevent fraud.

While it is unfortunate in this case that Lillian Price must suffer from the lack of legal ability and understanding of a scrivener who sought to perform a legal act of great importance and solemnity, that of drafting a will and purporting to supervise the execution thereof, it is better that she be denied her would-be beneficial interests in the will than to open the door and set a pattern, by those not versed in the law of wills and in utter disregard to the plain provisions of the statute, for the drafting of future wills so as to permit fraud, undue influence, overreaching and bad faith which might in some other instances be practiced upon the weak, aged or infirm testators in the disposition of their worldly goods.

We are of the opinion that the facts of the instant case disclose the proximity between the witnesses and the testator was not suf-

ficient to establish "presence," and, therefore, the will does not meet the necessary requirements of G. S. 1949, 59-606, authorizing its admission to probate as the last will and testament of Henry H. Weber, deceased. The judgment of the trial court is reversed and the case is remanded with instructions to set aside the judgment admitting the will to probate.

It is so ordered.

PARKER, C. J., and PRICE and FATZER, JJ., dissent.