Pauline K. NICHOLS, Individually and as Independent Executrix of the Estate of Dwight M. Nichols, Sr., Deceased et al., Appellants,

v.

John ROWAN et al., Appellees.

No. 14632.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 15, 1967.

Rehearing Denied Dec. 13, 1967.

Murfee, Hoover & Kraft, William L. Durham, Houston, for appellants.

Cox, Smith & Smith, San Antonio, Walter R. Long, Jr., Karnes City, for appellees.

BARROW, Chief Justice.

A will contest. An instrument dated March 24, 1964, was admitted to probate as the last will and testament of Bruce J. Nichols after a jury trial. Testator's niece, Inez Hysaw Oxford, is the sole beneficiary under the will. This contest was originally filed by Dwight M. Nichols, Sr., brother of testator, but upon his death his

widow, individually and as independent executrix of Dwight's estate, together with their son, Dwight M. Nichols, Jr., were substituted as contestants and have perfected this appeal.

Contestants' three assignments of error relate to the contention that the writing was not executed in the manner required by Sec. 59, Probate Code, V.A.T.S.,[1] because one of the subscribing witnesses did not sign her name in the presence of the testator. It is undisputed that the writing contains the genuine signatures of testator and the two subscribing witnesses, which were subscribed for the purpose of executing this will. Contestants urge there is no evidence, or, in the alternative, the evidence is insufficient to support the jury finding that the attesting witness Mae Medlin was in the presence of testator when she subscribed her name to said writing. They also urge that the trial court erred in overruling contestants' objections to the definition of the word "presence" and in not giving the definition requested by them.

Testator was a bachelor who operated a large farm in Karnes County. He was admitted to Ward 42–G of Brooke Army Medical Center on March 13, 1964, suffering from cancer of the jaw. Although he was 76 years of age, the uncontradicted evidence supports the jury finding, which is not attacked on this appeal, that he possessed testamentary capacity at the time the writing was executed.

The will was prepared for testator by Captain Hollers, a licensed attorney in the Judge Advocate General's Office at Fort Sam Houston, who was assigned to the Legal Aid Assistance Program of said office. In this capacity, he prepared wills for patients at the hospital upon request, and Captain Hollers estimated that he had prepared from 900 to 1000 wills during the three years in this assignment. This will was prepared after interviews of from thirty to forty-five minutes each with testator in the ward on March 18 and March 23, 1964. After securing all the necessary information during these interviews, Captain Hollers dictated the will to Mrs. Muriel D. Meyer, one of two legal secretaries in his office. Captain Hollers checked the will for accuracy after it was typed and then returned it to Mrs. Meyer for execution. She was a notary public and as such executed the self-proving clause which was customarily used in Texas wills. This was the standard procedure regularly followed by this office.

This will, which is obviously very well prepared, consists of three double-spaced pages with the signature of testator on each page. The will is signed on page two, and under testator's signature is an attestation clause setting forth the statutory requisites, including the attestation that the witnesses subscribed their names at the request of testator and in the presence of testator and each other. The will is then witnessed by "Mae Medlin Maj ANC" and "Arthur Hurdle" with the address of each witness set forth opposite the name. On page three of said will is a statutory self-proving clause [2] which was subscribed and acknowledged by testator and both witnesses before Muriel D. Meyer, Notary Public in and for Bexar County, Texas.

The difficulty arising in the proof of this will can be largely attributed to frailties of the human memory. This is understandable in that its execution, which was of great importance to testator, was propably a routine or casual event to the other three persons who participated therein, in that there was nothing unusual surrounding the execu-

1. This section provides in part: "Every last will and testament, * * * shall be in writing and signed by the testator * * * and shall, if not wholly in the handwriting of the testator, be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the testator."

2. Sec. 59, V.A.T.S. Probate Code.

tion of this will. Testator remained in this ward for over three months after March 24, 1964. He then spent a month at the Veterans Hospital in Marlin, Texas, before returning to his farm. He was re-admitted to Brooke Army Medical Center a short time before his death in April, 1965.

Mrs. Meyer was a witness in the case, although she had been retired from Civil Service for nearly two years at the time of the trial. She identified this will by her signature on the notary's certificate and by her handwriting where she had inserted the names of the witnesses. She exhibited her notary's record book which contained an entry of this certificate, along with several others executed on this date. She testified, however, that she had no independent recollection of the facts surrounding the execution of this particular will. She was permitted to testify that the facts contained in the self-proving clause were true and correct.

The witness Hurdle, who was a sergeant in the army, assigned to Ward 42–G as wardmaster at the time of the execution of the will, was transferred to Germany before the trial and testified by deposition. He testified that the notary asked him to witness this will for testator who was sitting on the side of his bed, and that it was witnessed at the foot of testator's bed. Initially he testified that the other witness, Major Medlin, came there also and signed it. However, he later admitted that although he had a positive recollection of her signing the will, he could not be sure if she signed it at the foot of testator's bed or at the nurse's desk. He also recalled the notary's oath given in connection with the will. There is no doubt from his testimony that both he and Major Medlin witnessed the will and both knew the purpose of subscribing this instrument. Also, the testator knew that all parties were executing his will. Hurdle was unwilling to state positively that Major Medlin signed the instrument by testator's bed, although he twice stated that this was his recollection.

Major Medlin, who retired in January, 1965, testified as a witness on behalf of contestants and, contrary to the testimony of Mrs. Meyer and Sgt. Hurdle, she was a very positive witness. She identified her signature which was subscribed for the purpose of witnessing the will. She testified, however, that the notary was not present in the ward on this occasion, and that Sgt. Hurdle brought the will to her for witnessing and that she did so standing at the nurse's desk, away from the bed. She had no communication with testator on this occasion and does not know where he was at the time she signed. Although in the same room, she was outside the view of testator at this time unless he was standing or sitting on the end of his bed. Otherwise testator's view of this desk was blocked by a five-foot partition separating his cubicle from that of other patients. Contestants urge that her testimony established that this witness did not subscribe the will in the presence of testator.

It is seen, however, that her credibility on this point was placed in issue by her equally positive, but clearly erroneous recollection of other facts. She testified that she recalled the event so well because it occurred just moments before testator was to be transferred to a Veterans Hospital and, in fact, attendants were waiting to take him away. The uncontradicted record establishes that testator was not transferred until July 16, 1964. When apprised of this fact, contestants attempted to show by Major Medlin that the will might have been dated prematurely. Such a contention would go in the face of three dates on the will, all near the signatures of the witnesses, the dated entry in the notary's record book and several dated entries made on testator's work card kept by the legal assistance office. Furthermore, her testimony is contradicted by the testimony of Mrs. Meyer and Hurdle as to the presence of Mrs. Meyer.

The Texas cases uniformly have held that the declarations of the attesta-

tion clause showing due execution of the will are competent and admissible evidence of the facts therein recited. In Wilson v. Paulus, 15 S.W.2d 571 (Tex.Com.App. 1929), the Court approved the following rule: "A full attestation clause reciting compliance with all formalities of execution and signed by the witness is prima facie evidence of the validity of the will, although the witness' memory is faulty, or he contradicts the facts stated in the clause, or where he is dead. The statements of the attestation clause may, however, be rebutted by proper evidence." See also: Massey v. Allen, 248 S.W. 1067 (Tex. Com.App.1923); Reese v. Franzheim, 381 S.W.2d 329 (Tex.Civ.App.—Houston 1964, writ ref'd); Seydler v. Baumgarten, 294 S.W.2d 467 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.); Ludwick v. Fowler, 193 S.W.2d 692 (Tex.Civ.App.—Dallas 1946, writ ref'd n. r. e.); 40 A.L.R.2d 1223.

■ Therefore, it cannot be said that there is no evidence to support the jury's finding that the witness, Mae Medlin, was in the presence of testator when she witnessed his will. Further, we cannot say from an examination of the entire record that such finding is so against the great weight and preponderance of the evidence as to be clearly wrong.

Contestants timely objected to the definition of the term "presence" as given by the trial court and requested the court to submit a definition which contained a requirement that the will must be attested "within the sight of the testator." It is seen that the Texas statute contains no such requirement. Cf. In re Weber's Estate, 192 Kan. 258, 387 P.2d 165 (1963). Furthermore, such a contention was rejected in the only Texas case we have found on this point. See Earl v. Mundy, 227 S.W. 716 (Tex.Civ. App.—El Paso, 1921, writ ref'd). It was there held that a contested codicil was valid as a matter of law although the sub-scribing witnesses were across the room with their backs to testator when they signed the codicil.

The meaning of the term "presence" has been judicially interpreted many times in other jurisdictions and great importance is placed upon the circumstances in each individual case in determining the proper definition to be given. Undoubtedly the words "presence of testator" mean a "conscious presence." In addition, the basic rule of most jurisdictions is that to be within the testator's presence the attestation must occur where testator, unless blind, is able to see it from his actual position at the time, or at most, from such position as slightly altered, where he has the power readily to make the alteration without assistance. 75 A.L.R.2d 318, 328; 94 C.J.S. Wills § 189(b); 57 Am.Jur. Wills § 338; 33 Words and Phrases, Presence of the Testator.

■ The definition given by the trial court was in substantial accord with the above test. It required the attestation to be in the conscious presence of testator and that the testator must have either actually seen the witness subscribe her name to the will or been in such position that testator could, had he been so disposed, readily have seen same by some slight physical exertion on his part. Under the facts in this case, this definition fairly joined the issue in dispute between the parties as to whether Mae Medlin was in the presence of testator when she subscribed her name as a witness to said will. The trial court did not err in overruling contestants' objections to the definition given in connection with this issue and in not submitting contestants' requested definition.

The judgment is affirmed.

KLINGEMAN, J., disqualified and not participating.