Grady L. FOX et al., Appellants,

v.

AMARILLO NATIONAL BANK et al., Appellees.

No. 8771.

Court of Civil Appeals of Texas, Amarillo.

May 23, 1977.

Rehearing Denied June 20, 1977.

**548**

Clayton & Stubblefield, Cleo G. Clayton, Jr., Amarillo, for appellants.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, W. M. Sutton and Alan B. Jones, Amarillo, Stokes, Carnahan & Fields, Barry D. Peterson, Amarillo, Stone, Stone & Chambers, R. A. Stone, Amarillo, Witherspoon, Aikin & Langley, Richard E. Green, Hereford, Naman, Howell, Smith & Chase, Jerry P. Campbell, Waco, for appellees.

REYNOLDS, Justice.

Admitted to probate was the latest dated will of the decedent. As contestants of that will and proponents of an earlier will, the appellants contend that the trial court committed errors of such a substantive nature as to require reversal. We do not find that error has been presented. Affirmed.

Norah B. Craig, a widow whose two sons predeceased her, died 12 March 1976 at the age of 93. She had executed a will on 14 November 1974 and one on 24 May 1975 revoking, by each, all prior wills made by her. Each will established a trust for the benefit of her employee, Estella F. Billington, for her lifetime, and provided for the distribution of assets for religious, charitable and educational purposes.

Grady L. Fox was named the independent executor of the 14 November 1974 will, and he applied for its admission to probate. Amarillo National Bank was designated as independent executor of the 24 May 1975 will, and the bank offered that will for probate.

Fox, joined by Billington, opposed the bank's application for probate of the 1975 will on the grounds that Mrs. Craig lacked the requisite mental capacity to execute the latest will and that its execution was the result of undue influence. The bank, joined by Boys Ranch Foundation, Presbyterian Home for Children, King's Manor Methodist Home, Inc., and the Methodist Home, opposed the probate of the 1974 will. These latter entities, referred to as charitable organizations, also joined the bank in proposing probate of the 1975 will. Because the contests pertained to probate of wills providing for charitable purposes, the Attorney General of Texas was served and entered his appearance as a necessary party pursuant to Vernon's Ann.Civ.St. art. 4412a(2)(d) (1976).

The proceedings were consolidated in the district court. The court, hearing the matters sans jury, rendered judgment admitting the 1975 will to probate and denying the application for probate of the 1974 will. Fox and Billington have appealed, advancing twenty-six points of error grouped into three categories.

■ The first two points are the complaints of appellants Fox and Billington that the court erred in holding the charitable organizations had such interests under the 1975 will as to entitle them to propose it for probate and to oppose the 1974 will. Thereunder, it is argued that none of the charitable organizations possessed the degree of interest required by the various sections of the Texas Probate Code (1956) to propose or oppose the respective wills, and that their presence "in this lawsuit as parties serves no purpose other than to bolster the position of Amarillo National Bank of Amarillo, Texas and jeopardize the position and rights of" Fox and Billington. The record does not show that the complaints were preserved for appellate review, but, in any event, error is not presented.

Appellants do not identify the portion of the record giving rise to these complaints; therefore, we assume they have reference to their pretrial written motion, which is included in the transcript, requesting the court to require all appellees to establish in limine such an interest under the 1975 will as to entitle them, and each of them, to oppose the 1974 will and to propose the 1975 will for probate. However, the transcript, which is certified to contain true and correct copies of all proceedings as directed by counsel, one of whom requested inclusion of "all . . . orders," does not show any ruling endorsed on the motion or any order entered with respect to the motion.

It is axiomatic that in order to complain of a ruling made by the trial court, it is necessary to demonstrate that the ruling was made. Absent a showing of the pretrial ruling, it cannot be contended on appeal that the trial court erred in this respect, 3 Tex.Jur.2d, Rev., App & Err—Civil Cases § 99, for the record on appeal is binding. *Ray v. Gage*, 269 S.W.2d 411, 414 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.).

Even crediting appellees' statement, which also is not referenced to any portion of the record, that the court, after a pretrial hearing, overruled appellants' motion and held the charitable organizations to be proper parties, we would not be able to declare that the ruling is erroneous. The appellate record does not contain a report of the evidence heard by the trial court and, in the absence of that evidence, we are not in a position to determine the propriety of the court's ruling. *Spring Branch Independent School District v. Lilly White Church*, 505 S.W.2d 620, 622 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ).

■ Beyond that, although Mrs. Craig's 1975 will does not designate the appellee charitable organizations by name, the will provides that her property, including that remaining from the trust for the lifetime of Estella F. Billington, shall pass and vest under the provisions of one of her deceased son's probated will. These provisions of the son's will create a foundation, with Gertrude Craig as primary trustee, for religious, charitable and educational purposes, and three of the four appellee charitable organizations are specifically named as beneficiaries. In matters of joinder and misjoinder of parties, the trial court has broad discretion, particularly if the situation admits of doubt. *Royal Petroleum Corporation v. Dennis*, 160 Tex. 392, 332 S.W.2d 313, 317 (1960). Thus, in the trial before the court, we cannot say, from the bare charge that the presence of the charitable organizations as parties bolstered the bank's position and jeopardized the rights of appellants, that the court abused its discretion.

Moreover, the mere charge is not sufficient, without more, to show that the court's ruling, if actually made, was reasonably calculated to cause and probably did cause the rendition of an improper judg-

ment. Rule 434.[1] Accordingly, the first two points do not present error.

The 24 May 1975 will, which was not self-proved by affidavits of the form and contents provided in V.A.T.S. Probate Code, § 59 (Supp.1976),[2] was before the court. The name Norah B. Craig is signed thereto. Appearing immediately thereafter, over the signatures and addresses of the attesting witnesses, Billie Dormire and Gertrude Craig, is this attestation clause:

> The above instrument was now here published as her Last Will and signed and subscribed by NORAH B. CRAIG, the testatrix, in our presence, and we, at her request, in her presence and in the presence of each other, sign and subscribe our names as attesting witnesses.

Both of the attesting witnesses, each of whom was over fourteen years of age, and other witnesses testified.

■ By their points of error three through eighteen, inclusive, appellants attack the evidentiary bases for the findings necessary to admit the 1975 will to probate. Referring to the requirements of § 88 that an applicant must prove to the satisfaction of the court "that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make it a valid will," appellants initially contend that the legislature established these requisites to be the components of the self-proving affidavit it prescribed in § 59. Therefore, appellants say, all of the details in the affidavit form must be specifically established before a will may be admitted to probate. We do not subscribe to such a broad proposition.

The only purpose of the form and contents of the § 59 affidavits is to admit a will to probate without, and as an alternative to resorting to, the testimony of a subscribing witness. *Boren v. Boren*, 402 S.W.2d 728, 729 (Tex.1966). The Probate Code qualifies the typewritten 1975 will for probate if the issues of competency, execution and witnessing of the unrevoked will

are proved; and, if these issues are favorably resolved, the admission of the will to probate is required. *Cf. Nesbett v. Nesbett*, 428 S.W.2d 663, 664 (Tex.1968).

Aside from their general proposition, more specific are appellants' contentions that certain elements requisite to probate were not established. These are that neither of the attesting witnesses testified (1) that the 24 May 1975 will "bore the signature of Norah B. Craig or that the signature thereon was the signature of Norah B. Craig and the signature witnessed by them at the time they signed the will; " or (2) that "they subscribed their names to the will as witnesses after Norah B. Craig had signed and acknowledged it."

■ First, it is obvious that the recitations appearing in the attestation clause of the will are in contradiction of appellants' contentions. The attestation clause is prima facie evidence of the facts stated therein even where, although not here, an attesting witness contradicts those recitations. *Wilson v. Paulus*, 15 S.W.2d 571, 573 (Tex. Com.App.1929, holding approved); *Reese v. Franzheim*, 381 S.W.2d 329, 330 (Tex.Civ. App.—Houston 1964, writ ref'd n. r. e.).

■ Second, the recorded testimony does not bear out appellants' assertions. The following is taken from the examination of the attesting witness, Gertrude Craig:

Q Now, on the same day that this exhibit dated May 24, 1975 was signed, were you there?

A Yes, sir.

Q Who else was present?

A Billie Dormire and her daughter.

Q Where was this instrument signed?

A In Mrs. Craig's home.

Q And were you present and did you see Mrs. Craig sign this?

A Yes, I did.

Q And also was Mrs. Dormire present at the same time?

A Yes.

\*　\*　\*　\*　\*　\*

Q And I believe you previously testified for the record that you were both

---

1. Rules cited are the Texas Rules of Civil Procedure.

2. Subsequent references to section numbers are to those sections of the Texas Probate Code (1956).

present and saw Mrs. Craig sign this will dated May 24, '75?

A  Yes.

\*  \*  \*  \*  \*  \*

Q  Mrs. Craig, you have testified that you signed as a witness in the presence of Mrs. Craig on this will of May 24, 1975?

A  Yes.

Q  And you have testified that Mrs. Dormire did the same?

A  Yes.

Q  Did you and Mrs. Dormire sign in the presence of each other and in the presence of Mrs. Craig?

A  All three of us at the same time.

The examination of the attesting witness, Billie Dormire, reveals the following:

Q  Did you witness Mrs. Norah B. Craig signing the will?

A  Yes.

Q  Who else was there when you saw her sign it?

A  Just Gertrude Craig and Norah B. Craig.

Q  Did you sign as a witness on that will?

A  Yes, I did, sir.

Q  And at the time you signed it, Gertrude Craig was present?

A  Yes, sir.

Q  So your signatures were exchanged in the presence of each other.

A  Right.

Applying the standards of evidential review required by the points attacking the implied findings entitling the 1975 will to probate, we are of the opinion that there is some evidence of probative force to support the trial court's findings, that the evidence in support of the findings is not so weak, or the contrary evidence is not so overwhelming, as to warrant the setting aside of the findings, and that the findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Points three through eighteen, inclusive, are overruled.

■ Appellants employ the nineteenth and twentieth points to submit that the court erred in admitting the testimony of Gertrude Craig concerning transactions with the deceased testatrix contrary to the provisions of Vernon's Ann.Civ.St. art. 3716, the so-called Dead Man's Statute, and in holding that appellants had waived their right to object to the admission of such testimony. Despite the interesting theory underlying the presentation of the points, appellants have waived the objections now made on appeal.

The testimony of Gertrude Craig was offered and received without objection. The objectionable nature now claimed was then apparent; but it was only after she had completed her testimony and was excused and appellees, together with the Attorney General, had rested that appellants inquired, "Your Honor, may we take up the question of the Dead Man's Statute application to this case before we (appellants) start?" Receiving the court's approval, appellants merely mentioned that Gertrude Craig is an interested party by reason of her status as a trustee and a beneficiary of the foundation created under the son's will, and that her testimony went into transactions with the deceased. There was not then, nor later, voiced any objection to the receipt of the testimony and no motion to strike the testimony was made. The theory of inadmissibility advanced on appeal was not raised in the trial court.

■ Testimony otherwise excluded by operation of V.A.C.S. art. 3716 is admissible and has probative force when it is received, as it was here, without objection at the proper time and for the proper reason. *Collins v. Smith*, 142 Tex. 36, 175 S.W.2d 407, 409 (1943). Appellants may not complain on appeal that the court below was not more vigilant for them than they were for themselves. *Shumard v. Johnson*, 66 Tex. 70, 17 S.W. 398, 399 (1886). Points nineteen and twenty are overruled.

■ Appellants' last six points are challenges to the legal and factual sufficiency of the evidence to support the court's implied finding that Mrs. Norah B. Craig pos-

sessed testamentary capacity when she executed her 24 May 1975 will. As developed, the points present no error.

Although acknowledging that three witnesses testified the testatrix was mentally competent, appellants do not develop their points with any statement of the evidence or any particulars illustrating why there is no evidence of testamentary capacity or why the evidence thereof is insufficient. Instead, there are only general statements, representative of which is this one: "(I)t is respectfully urged that the testimony of these witnesses failed to establish by any evidence or by sufficient evidence that Norah B. Craig possessed testamentary capacity on the day she signed the instrument dated May 24, 1975." Appellants conclude by stating that this testimony wants greatly in weight and credibility when compared to the detailed testimony of the witness who stated the testatrix was confused, did not indicate she had signed a will, or would have understood what she signed if she had signed a will on the date of the 1975 will.

Rule 418 places upon appellants the duty to show, by reference to pages in the record, the facts in support of their contentions. Appellants have not done so, and this Court has no duty to independently search through the 334 pages of the statement of facts and many pages of exhibits in a speculative attempt to validate appellants' points. *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197, 201 (1955).

Nevertheless, because we reviewed all of the evidence in considering preceding points, we state that there is some evidence that the testatrix possessed testamentary capacity when she executed her 24 May 1975 will, and that the implied finding that she possessed testamentary capacity is not against the great weight and preponderance of the evidence. Although one witness testified in effect that the testatrix lacked testamentary capacity, three witnesses, two of whom were the attesting witnesses, testified that the testatrix possessed the mental capacity to understand the nature and extent of her property and the disposition thereof by will on 24 May 1975. Another witness expressed the opinion that the testatrix was mentally alert and seemed to understand what she was doing in July of 1974, on 30 May 1975 and on 6 June 1975. Points twenty-one through twenty-six, inclusive, are overruled.

The judgment is affirmed.