In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-559 CV


____________________



IN THE ESTATE OF ROBERT SLOMAN BROWNE, III







On Appeal from the County Court at Law No. 3


Jefferson County, Texas


Trial Cause No. 83969






OPINION


 Robert S. Browne, IV, Catherine Jane Browne Gunnells, Mary Elizabeth Browne
Pelz, Thomas Michael Browne, Stephen David Browne, Michele Laurie Browne Akin, and
James William Browne ("Contestants") appeal the trial court's granting of summary
judgment for the proponent in this will contest proceeding. Dr. Browne ("Decedent") died
on June 28, 2002, at the age of 83. His wife of twenty years, Kathleen Durso Browne
("Proponent"), filed an application for probate of a will which had been executed on May
28, 2002, while Dr. Browne was being treated in a hospital intensive care unit. The
appellants, who are Dr. Browne's children and step-children, present four issues, which
we shall address in reverse order. 

 Issue four challenges the movant's summary judgment evidence. (1) Contestants
objected to the evidence in their summary judgment response, but the record does not
reflect that the trial court ruled on their objections. Preservation is a prerequisite to
appellate review, and involves two steps: presentation and ruling. Tex. R. App. P.
33.1(a). When a party submits incompetent evidence in support of its motion for summary
judgment, the opposing party must not only object to the evidence but also obtain a ruling
on the objection. "The failure to obtain a written ruling on objections to summary
judgment evidence waives the issue, unless the record reflects an 'implicit' ruling thereon
by the trial court." Graves v. Alders, 132 S.W.3d 12, 17 (Tex. App.--Beaumont 2004,
pet. denied). (2) During the summary judgment hearing, Contestants mentioned only one of
their objections, that the affidavit of Decedent's treating physician was defective because
he did not attach the records he relied upon in forming his opinion and that he did not state
that his opinion was based upon reasonable medical probability. The trial court did not
articulate any ruling on the objection, nor did he refuse a request that he do so. Therefore,
no ruling, implicit or explicit, may be inferred from the record. Issue four is overruled.

 Issue three contends the trial court erred in granting summary judgment because the
summary judgment evidence established that the will was not executed with the formal
requisites of Section 59 of the Probate Code, in that witnesses did not sign the will in the
testator's presence. Contestants produced the affidavit of one of the subscribing witnesses,
in which she states that she watched Decedent execute the will from inside the door of the
intensive care unit, but that she and the other witness signed the will in the ICU waiting
room. No evidence established whether the testator could see the witnesses sign the will. 
Proponent cites Nichols v. Rowan, 422 S.W.2d 21, 23-24 (Tex. Civ. App.--San Antonio
1967, writ ref'd n.r.e.), and Allen v. Nesmith, 525 S.W.2d 943, 946 (Tex. Civ. App.--Houston [1st Dist.] 1975), writ ref'd n.r.e., 531 S.W.2d 330 (Tex. 1975), for the
proposition that controverting testimony from a subscribing witness cannot destroy the
prima facie case for the validity of the will established by the declarations contained in the
attestation clause. In Nichols, the court concluded that the attestation clause, although
controverted by later testimony from one of the subscribing witnesses, supported the jury's
verdict in favor of the will proponent. Nichols, 422 S.W.2d at 24. The case is not
precedent for establishing the requisite formalities as a matter of law. Allen held "[t]here
is no rule of law which prohibits an attesting witness from contradicting the statements
contained in the attestation clause. The testimony of such a witness must be considered
by the trier of facts, who alone can determine the credibility of the witness and the weight
to be given his testimony." Allen, 525 S.W.2d at 946. Thus, by submitting a
controverting affidavit from the subscribing witness, the Contestants raised a fact issue on
whether the will was executed with the formalities required by the Probate Code. (3) See
Tex. Prob. Code Ann. § 59 (Vernon 2003). Issue three is sustained.

 Issue two contends the trial court erred in admitting the will to probate because
Decedent neither read the will nor had it read to him before signing it. The will proponent
need not produce evidence that the testator actually read and understood the will if he was
of sound mind and not subject to undue influence. The fact that he signed it and requested
witnesses to sign it, and acknowledged it as his last will, is prima facie evidence of his
knowledge of its contents. Venner v. Layton, 244 S.W.2d 852, 856 (Tex. Civ. App.--Dallas 1951, writ ref'd n.r.e.). The issue, therefore, is one of testamentary capacity. That
Decedent did not read the will when he executed it is not an issue relating to the
satisfaction of the statutory requisites of Section 59 of the Probate Code, as Contestants
argue in their brief on this point. Issue two is overruled.

 Issue one contends the trial court erred in granting summary judgment because the
evidence raises a genuine issue of material fact that Decedent lacked testamentary capacity
at the time the will was executed. Testamentary capacity must be established by the will
proponent. Tex. Prob. Code Ann. § 88(b)(1) (Vernon 2003). In support of her motion
for summary judgment, Proponent submitted the self-proving affidavit and affidavits from
family members and the treating physician, as well as a memorandum from the attorney
who drafted the will. This evidence supports a conclusion that Decedent was, on May 28,
2002, possessed of sufficient mental faculties to understand he was making a will, the
effect of making a will, the general nature and extent of his property, the natural objects
of his bounty, and possessed the ability to consider the business to be transacted and to
form a reasonable judgment about it. See Prather v. McClelland, 76 Tex. 574, 13 S.W.
543, 546 (1890); Bracewell v. Bracewell, 20 S.W.3d 14, 19 (Tex. App.--Houston [14th
Dist.] 2000, no pet.). 

 In response, Contestants argue that the notary could not have determined Decedent's
testamentary capacity because he was intubated on that date and unable to speak.
Contestants argue that they supplied summary judgment evidence sufficient to raise a fact
issue on testamentary capacity. One of the contestants supplied an affidavit, in which he
explains that he has been a licensed physician since 1988, that he reviewed Decedent's
medical records for the period from May 21, 2002 through June 3, 2002, that the records
do not reflect an assessment of Decedent's cognitive ability, that Decedent was almost
constantly restrained to prevent him from pulling out the respirator tube, indicating that
despite being a physician, Decedent could not comprehend the need to keep the tube in
place, that the hospital admission forms were signed by Proponent rather than by
Decedent, that Versed and Diprivan were administered to Decedent on the day the will was
executed and that those drugs would have prevented him from having the ability to
understand the business of making a will and to understand the full effect of the will, and
would also have prevented Decedent from having sufficient memory to make reasonable
judgment about his business. Another of the contestants, an internist with fifteen years of
experience, presented an affidavit that he, too, had reviewed Decedent's medical records,
and that the effects of Versed would be prolonged on a person with renal failure. He also
stated that he visited Decedent on the two mornings prior to the signing of the will, and
on those days Decedent was unable to communicate and could not follow a train of thought
regarding an important medical decision. In his opinion, Decedent was in no physical
condition to sign the will or to understand its ramifications. This evidence is probative of
capacity and indicates a lack of testamentary capacity. See Croucher v. Croucher, 660
S.W.2d 55, 57 (Tex. 1983). 

 Proponent points to entries in the medical records indicating that Decedent was not
in distress and was not physically restrained on May 28. There is, she argues, no evidence
that the Diprivan and Versed doses actually had an adverse effect on the decedent. She
also points to Decedent's post-hospitalization conversations regarding the terms of the will
as evidence that the will was executed according to his wishes and was not revoked by
him. The weaknesses in the contestants' evidence may deprive it of weight but do not
destroy its probative value. 

 There is some evidence that as a result of his illness and medical treatment, the
testator suffered a diminished testamentary capacity that persisted during the time he
executed the will now offered for probate. This evidence raises a fact question as to
whether Decedent had testamentary capacity on the date the will was executed, and the
proponent failed to establish testamentary capacity as a matter of law. Therefore, it was
error for the trial court to grant summary judgment on this issue. Issue one is sustained. 
 The judgment of the trial court is reversed. We remand the case to the trial court
for trial. 

 REVERSED AND REMANDED.



 ____________________________

 STEVE MCKEITHEN

 Chief Justice 


Submitted on April 15, 2004

Opinion Delivered July 1, 2004

Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. In a summary judgment case, the issue on appeal is whether the movant met her
summary judgment burden by establishing that no genuine issue of material fact exists and
that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P.166a(c). The
standards for reviewing summary judgment are: (1) the movant for summary judgment has
the burden of showing that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law; (2) in deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non-movant will be taken
as true; and (3) every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor. Nixon v. Mr. Property Management, Inc., 690
S.W.2d 546, 548-49 (Tex. 1985). 
2. The requirement that the order be in writing crept into our jurisprudence because
summary judgment motions are considered on the record without an evidentiary hearing.
Where, as here, the appellate record includes a reporter's record of the summary judgment
hearing, we can determine whether the trial court ruled on the motion during the hearing. 
Such an action is not precluded by McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d
337, 340-43 (Tex. 1993). In Graves, 132 S.W.3d at 17, we recognized that an oral ruling
was at least an implicit ruling and addressed the issue on its merits.
3. The controverting affidavit recites, "The statements contained herein are to the
best of my knowledge true and correct." Such a statement potentially destroys the
probative value of the evidence. See Price v. American Nat. Ins. Co., 113 S.W.3d 424,
429-30 (Tex. App.--Houston [1st Dist.] 2003, no pet.); Hall v. Stephenson, 919 S.W.2d
454, 466 (Tex. App.--Fort Worth 1996, writ denied). In this case, however, the source
of the witness's personal knowledge is apparent from the document. See Franks v.
Brookshire Bros., Inc., 986 S.W.2d 375, 378 (Tex. App.--Beaumont 1999, no pet.).