

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00404-CV

---

**IN THE ESTATE OF CHESTER FREEMAN YOUNGBLOOD, DECEASED**

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 2017-091-P, Honorable James Anderson, Presiding

June 27, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

This case has all the makings of a legal riddle: two Debras, two wills, and one key question—does a witness to a will need to know it's a will to validly witness the signing of it? The trial court thought so and tossed the 2016 will aside. We disagree. The law requires witnesses to observe a signature—not to understand the legal significance behind it. Because the statutory requirements were otherwise satisfied, we hold the 2016 will is valid and reverse the trial court's judgment.

Appellants, Tyra Natasha Harris and Debra Ann Youngblood (the "Will Contestants"), challenge a judgment from a will contest in favor of Appellee, Debby Kay Youngblood, f/k/a Debra Kay Youngblood. The Will Contestants claim the trial court erred

by: (1) finding the will they submitted for probate was not valid; and (2) admitting medical correspondence from the Veterans Administration (the "VA") by overruling a hearsay objection. We reverse, render, and remand for further proceedings.

**BACKGROUND**

In 2016, Chester Freeman Youngblood, a 90-year-old World War II veteran and former Amarillo resident, died in Tulsa, Oklahoma under the care of his daughter, Debra Ann Youngblood, and granddaughter, Tyra Harris Youngblood. Chester was married to Debby Kay Youngblood at the time of his death. Debra Ann is a daughter of Chester's former wife and is not related to Debby Kay by blood.

In March 2017, Debby Kay filed an application for the probate of Chester's will as a muniment of title in Randall County, Texas, where the couple resided prior to his death. The will presented by Debby Kay was executed by Chester in 2009 (the "2009 will"). A year later, Debra Ann and her daughter, Tyra, contested the will presented by Debby Kay. Debra Ann and Tyra alleged Chester executed a new will in 2016 (the "2016 will") which revoked the 2009 will. Apparently, due to some family issues, including COVID restrictions, they were unable to file a copy of the will until 2023. The parties engaged in discovery in preparation for a trial on the merits, and Debby Kay moved for and obtained copies of correspondence between Chester and the VA.

The litigants did not request a jury, and the will contest was submitted to a bench trial. During the trial, over the objections of Tyra and her mother, Debby Kay introduced VA correspondence showing Chester was required to appoint a fiduciary to manage his financial affairs. Additionally, one of the witnesses to the will presented by Tyra and Debra

2

Ann testified he did not know he was witnessing the signing of a will. At the conclusion of the trial, the trial court found the 2016 will was not properly executed and therefore did not meet the requirements for admission to probate. The court also found Debby Kay's 2009 will had not been rejected by Chester and admitted the will to probate.[1] Debra Ann and Tyra then filed this appeal.

## STANDARD

If a case proceeds to a bench trial and the trial court enters findings of fact and conclusions of law, appellate courts defer to the trial court's findings of fact—so long as they are supported by the record—and reviews conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) (citations omitted). If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A court abuses its discretion when it errs in determining what the law is or applying the law to the facts, or when it could reasonably have reached only one decision on the record yet fails to do so. *PDT Holdings, Inc. v. City of Dall.*, No. 23-0842, 68 Tex. Sup. Ct. J. 746, 2025 Tex. LEXIS 356, at *9 (Tex. May 2, 2025) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded

---

[1] Tyra and her mother did not contest whether the 2009 will was properly executed, and the will contained a self-proving affidavit.

people to reach the verdict under review. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 333–34 (Tex. 2020) (citations and quotations omitted). We credit evidence favoring the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* Thus, we accept the trial court's findings unless conclusively proved otherwise. *Id.* When we review factual sufficiency, we consider and weigh all of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *City of Keller v. Wilson*, 168 S.W.3d 802, 826 (Tex. 2005) (citations omitted).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *George Fleming & Fleming & Assocs., L.L.P. v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)).

## ANALYSIS

### ISSUE ONE—FINDING 2016 WILL WAS INVALID

The Will Contestants' first issue challenges the trial court's finding the 2016 will invalid. During the trial, the court asked Gary Pastwa, one of the subscribing witnesses to the 2016 will, the following:

> THE COURT: So you didn't know what it was, she just said we need you to witness this?
>
> THE WITNESS: I wasn't totally sure what I was witnessing other than his signature on the piece of paper.
>
> THE COURT: So Mr. Youngblood never told you this was his will, did he?
>
> THE WITNESS: I was trying to remind myself the other day. I cannot remember them saying what I was signing.

4

At the conclusion of trial, the court stated the following:

> [W]e have one witness who is totally disinterested and has a clear memory of what happened and that, again, is Gary Pastwa the next-door neighbor. He was asked to come over and he was asked to witness Mr. Youngblood's signature on this document. When specifically asked, Gary Pastwa testified the decedent never acknowledged that he was revoking his prior will. He never acknowledged the new document as a will. And that Mr. Pastwa said he didn't even know he was witnessing a will.
>
> That is required under Texas law that the person whose will it is has to acknowledge this is my will and I am asking you to sign it as witnesses, that this is my last will and testament. Mr. Pastwa is the only person who is disinterested, has no fight with anybody, and has a clear memory of what happened. And he said that never happened.
>
> Because of that, I am going to deny the application to admit the 2016 will to probate finding that it was not done correctly . . . .

In addition, the trial court's order admitting the 2009 will to probate stated the following findings:

- "The 2016 Will offered for probate by the [Will Contestants] was not executed with the required formalities, and therefore is not valid."

- "The 2009 Will was not revoked by Decedent."

The trial court clearly based its rejection of the 2016 will based upon the fact Pastwa, the only witness with a clear recollection of the signing of the will, could not testify Chester knew he was signing his will and was revoking his 2009 will. The court also placed an emphasis on the fact Pastwa stated he did not know at the time of the signing what kind of document Chester was placing his signature upon. The Will Contestants argue there is no requirement under the law the witness must know the document which is being signed is the testator's will, nor is there a requirement the testator make a

5

declaration he is signing his will and revoking his prior wills. We agree with the Will Contestants.

The trial court misstated the law: a subscribing witness to a will does not need to know the document being signed by the testator is in fact a will. The statutory elements required to be proven for admission of a will that is not self-proving are:

(1) the testator is dead;

(2) four years have not elapsed since the date of the testator's death and before the application;

(3) the court has jurisdiction and venue over the estate;

(4) citation has been served and returned in the manner and for the period required by this title;

(5) the person for whom letters testamentary or of administration are sought is entitled by law to the letters and is not disqualified;

(6) the testator did not revoke the will; and

(7) if the will is not self-proved, the testator:

(A) executed the will with the formalities and solemnities and under the circumstances required by law to make the will valid; and

(B) at the time of executing the will, was of sound mind and:

(i) was 18 years of age or older;

(ii) was or had been married; or

(iii) was a member of the armed forces of the United States, an auxiliary of the armed forces of the United States, or the United States Maritime Service.

TEX. EST. CODE ANN. §§ 256.151, 256.152. We note, among the statutory requirements outlined above, none requires the witness to have knowledge of the document or the testator to declare or publish to the witness the will's contents.

6

Here, the first five elements are not at issue. With regard to the sixth element, whether Chester revoked his prior will or not, that is also determined by statute:

> A written will, or a clause or devise in a written will, may not be revoked, except by a subsequent will, codicil, or declaration in writing that is executed with like formalities, or by the testator destroying or canceling the same, or causing it to be destroyed or canceled in the testator's presence.

§ 253.002.

Because the 2016 will contains a clause revoking all former wills, whether Chester did so depends entirely on whether the 2016 will was valid. But the trial court erroneously concluded, because Chester did not declare to Pastwa he was signing his will and revoking his prior will, the 2016 will was not "[executed] with the formalities and solemnities and under the circumstances required by law to make the will valid." *See* § 256.152.

There is no statutory requirement the witnesses to the testator's signing of his will, at the time of the signing, have actual knowledge the document being executed is in fact a will. *See* §§ 256.151, 256.152; *Brown v. Traylor*, 210 S.W.3d 648, 663–68 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that a witness need not know that he or she is signing a will); *accord Jones v. Jones*, 649 S.W.3d 577, 588–89 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *In re Estate of Kam*, 484 S.W.3d 642, 651 (Tex. App.—El Paso 2016, pet. denied). In addition, Pastwa's testimony confirmed the 2016 will was the document he witnessed by testifying about who was there, confirming the signatures and notary, and confirming Chester signed the document. Whether Pastwa himself understood the document signed at the time of the execution is immaterial; the Estates Code does not

7

require witnesses to read the document or be familiar with its contents. §§ 256.151, 256.152; *Brown*, 210 S.W.3d at 663–68.

Moreover, the document contains the acknowledgement, signed by Pastwa, whereby he attested at the time:

> We the undersigned, hereby certify that the above instrument, which consists of [blank] pages, including the page(s) which contain the witness signatures, was signed in our sight and presence by CHESTER FREEMAN YOUNGBLOOD (the "Testator"), who declared this instrument to be his/her Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, and in the sight and presence of each other, do hereby subscribe our names as witnesses on the date shown above.

His signature was also notarized in the self-proving affidavit attached to the will, in which he acknowledged Chester executed the will and declared it to be his will and revoked all prior wills. This was all done in 2016. More than eight years later, in 2024, Pastwa could not remember whether Chester verbally declared the instrument to be his will is of no consequence. Pastwa already attested as such, and his lack of memory does not undo his prior attestation. *Fox v. Amarillo Nat'l Bank*, 552 S.W.2d 547, 550 (Tex. App.—Amarillo 1977, writ ref'd n.r.e.) ("The attestation clause is prima facie evidence of the facts stated therein even where, although not here, an attesting witness contradicts those recitations."); *accord Allen v. Nesmith*, 525 S.W.2d 943, 945–46 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Nichols v. Rowan*, 422 S.W.2d 21, 23–24 (Tex. App.—San Antonio 1967, writ ref'd n.r.e.) ("The Texas cases uniformly have held that the declarations of the attestation clause showing due execution of the will are competent and admissible evidence of the facts therein recited.").

8

The attestation is not some perfunctory act to be easily marred by faulty memory at a later date. *Nichols*, 422 S.W.2d at 22–24. The witness's declaration in the moment in the presence of the notary public is the most accurate representation of the witness's memory. "The statements of the attestation clause may, however, be rebutted by proper evidence." *Id.* at 24 (quoting *Wilson v. Paulus*, 15 S.W. 2d 571 (Tex. Comm'n App. 1929).[2]

No evidence was presented by the parties to suggest Pastwa's attestation was not accurate and true. Debby, Chester's wife, testified she was not present for the signing of the will, and therefore she could not offer any contradictory evidence regarding the attestation. Although the other subscribing witness, Willa Holligan, testified she did not remember signing as a witness, her lack of memory does not contradict Pastwa's attestation. The testimony of the notary, Paul Holligan, confirmed Willa did indeed sign the will, and he also confirmed Chester signed his will and the self-proving affidavit because he distinctly remembered Chester refused to sign his notary book after the will signing.[3]

The trial court, having found Pastwa's testimony credible otherwise, had legally sufficient evidence to find the 2016 will was executed with all the required formalities and solemnities. The credible testimony of only one subscribing witness is sufficient to prove the attestation of a will which is not self-proving. § 256.153; *In re Estate of Kam*, 484

---

[2] "A full attestation clause reciting compliance with all formalities of execution and signed by the witness is prima facie evidence of the validity of the will, although the witness'[s] memory is faulty, or he contradicts the facts stated in the clause, or where he is dead." *Id.* (quoting *Wilson*, 15 S.W.2d at 571).

[3] A notary public is not required to have persons who are executing notarized documents to sign the notary's record book—the statutorily required public record of the services provided. *See* TEX. GOV'T CODE ANN. § 406.014. Chester's refusal to sign the record book did not invalidate the notarizing of the will.

S.W.3d at 650–51 ("So long as at least two non-inheriting witnesses attest to the signature, and so long as at least one testifies, the non-self-proving will meets the statutory formalities."); *accord Jones*, 649 S.W.3d at 588. Nevertheless, the trial court reached the wrong legal conclusion based upon its factual findings.

We hold Chester's 2016 will was proved valid and entitled to admission to probate. Because the 2016 will contains a provision revoking all prior wills and codicils, the 2009 will should not have been admitted to probate. Accordingly, we must reverse the trial court's judgment. The Will Contestants' first issue is sustained.

## ISSUE TWO—ADMISSION OF VA RECORDS

For their second issue, the Will Contestants complain the trial court erred in admitting certain communications between Chester and the VA. Particularly, they complain the trial court should have sustained their hearsay objection to letters from the VA which informed Chester he would have to appoint a fiduciary to handle his VA business because of a diagnosis from a doctor indicating dementia. The indication of dementia is relevant to the issue of whether Chester had testamentary capacity at the time he executed the 2016 will.

The trial court, as factfinder, discounted the value of the VA records for determining whether Chester had testamentary capacity at the time of the execution of the 2016 will.[4] After also discounting the testimony of the interested parties regarding testamentary capacity, the court appears to have relied on the testimony of Gary Pastwa, the only

___

[4] The trial court stated: "[Texas] law is very clear that if a person has a fiduciary appointed to receive funds whether it be from the VA or from social security, that is not the same as finding a person having lost testamentary capacity. . . ."

10

disinterested party with a clear memory of Chester's capacity and the events of the 2016 will's execution.

Erroneous rulings require reversal only if a review of the record reveals the error was harmful. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 728 (Tex. 2016). Here, because the trial court did not make an express finding Chester lacked testamentary capacity to make the 2016 will, finding instead the will did not meet the required formalities to be valid, the admission of the evidence, even if erroneous, did not prejudice the Will Contestants.

Even if the trial court did err in admitting the VA records, because the trial court discounted the value of the records for determining Chester's testamentary capacity, the error was harmless. TEX. R. APP. P. 44.1(a)(1). We overrule the Will Contestants' second issue.

## CONCLUSION

The trial court's judgment is reversed, and we render judgment Chester's 2016 will is admitted to probate and his 2009 will is denied admission to probate. *See In re Estate of Kam*, 484 S.W.3d at 655; *Jones*, 649 S.W.3d at 589. We remand this matter for further proceedings in accordance with this opinion.

Alex Yarbrough
Justice

Parker, J., concurring in the result.

11